1  Shaun Setareh, Esq. (SBN 204514)
2  Thomas Segal, Esq. (SBN 222791)
   Farrah Grant Esq. (SBN 293898)
3  **SETAREH LAW GROUP**
   9665 Wilshire Blvd., Suite 430
4  Beverly Hills, California 90212
   Telephone: (310) 888-7771
5  Facsimile: (310) 888-0109
   shaun@setarehlaw.com
6  thomas@setarehlaw.com
   farrah@setarehlaw.com
7
8  Attorneys for Plaintiff
   FRANCISCO FIGUEROA
9
10              **UNITED STATES DISTRICT COURT**

11           **NORTHERN DISTRICT OF CALIFORNIA**

12

13 | FRANCISCO FIGUEROA, on behalf of himself, all others similarly situated | CASE No. 3:18-cv-07796-RS |

14                Plaintiff,               **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF**
15                                         **CLASS ACTION AND PAGA**
          v.                               **SETTLEMENT; MEMORANDUM OF**
16                                         **POINTS AND AUTHORITIES;**
   DELTA GALIL USA, INC., a Delaware       **DECLARATION OF SHAUN SETAREH**
17 corporation; PENNSYLVANIA V.F.          **IN SUPPORT THEREOF;**
   CORPORATION, a Pennsylvania corporation; **DECLARATION OF MICHAEL**
18 and DOES 1 through 50, inclusive        **MOORE IN SUPPORT THEREOF;**
                                           **[PROPOSED] ORDER**
19                Defendants

20                                         Date: December 14, 2023
21                                         Time: 1:30pm
                                           Courtroom: 3
22

23

24

25

26

27

28
                                           Case No.  3:18-cv-07796-RS

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on December 14, 2023 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 3 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, Francisco Figueroa, on behalf of himself and all others similarly situated and the general public ("Plaintiff"), seeks an order that this case be maintained as a class action for the purposes of settlement under Federal Rule of Civil Procedure ("Rule") 23, on behalf of a settlement class comprised of Plaintiff and all other persons similarly situated, for an order directing notice to the class, and for a scheduling order setting a Fairness Hearing for final approval of the proposed settlement.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Shaun Setareh, the Declaration of Michael Moore, and all documents and arguments in support thereof.

Plaintiff requests the following relief:

1.       Preliminary approval of the Class Action Settlement Agreements, ("Settlements") attached as Exhibits 1-2 to the Declaration of Shaun Setareh ("Setareh Decl."), and all related notice and other deadlines as set forth in the Settlement Agreements or as otherwise ordered by the Court subject to the terms and conditions of the Settlement Agreements so that Plaintiff may then move the Court for Final Approval of the Settlement Agreements;

2.       Conditional certification of the Settlement Classes as defined in the Settlement;

3.       The appointment of Shaun Setareh, Thomas Segal, and Farrah Grant of Setareh Law Group as Settlement Class Counsel;

4.       The appointment of Plaintiff Francisco Figueroa as the Class Representative;

5.       An Order directing the dissemination of the notice of class action settlement to the Settlement Class, via United States First-Class Mail as proscribed by the Settlement;

6.       Appointment of Phoenix Class Action Settlement Administration as Settlement Administrator;

7.       An Order setting a schedule for the dissemination of notice to the Settlement Class;

1    deadlines for Settlement Class Members to opt-out of the Settlement; and deadlines for Settlement

2    Class Members to object to the settlement; and for a Fairness Hearing to address final approval of

3    the Class Action Settlement Agreement following the notice period; and

4        8.    Any other relief that the Court deems just and equitable under the circumstances.

6    DATED: October 30, 2023                    SETAREH LAW GROUP

8                                             */s/ Shaun Setareh*
                                             SHAUN SETAREH
                                             THOMAS SEGAL
9                                            FARRAH GRANT
                                             Attorneys for Plaintiff
10                                           FRANCISCO FIGUEROA

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     PROCEDURAL HISTORY .................................................................................2

        A.      PLEADINGS..................................................................................................2

        B.      MOTIONS......................................................................................................2

        C.      APPEAL .........................................................................................................3

        D.      DISCOVERY .................................................................................................3

        E.      THE PARTIES' MEDIATION EFFORTS ....................................................4

III.    SUMMARY OF SETTLEMENT TERMS .........................................................4

        A.      VF CORPORATION SETTLEMENT .........................................................4

                1.      Monetary Terms of Settlement.............................................................4

                2.      Settlement Class and PAGA Group Definitions. ................................5

                3.      Settlement Class and PAGA Group Releases. ....................................5

                4.      Settlement Administration and Notice. ...............................................6

                5.      Allocation of Settlement Payments. ....................................................7

                6.      Disposition of Uncashed Checks..........................................................7

        B.      DELTA GALIL SETTLEMENT ...................................................................7

                1.      Monetary Terms of Settlement.............................................................7

                2.      Settlement Class and PAGA Group Definitions. ................................8

                3.      Settlement Class and PAGA Group Releases. ....................................9

                4.      Settlement Administration and Notice. .............................................10

                5.      Allocation of Settlement Payments. ..................................................10

                6.      Disposition of Uncashed Checks........................................................10

IV.     LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS
        ACTION SETTLEMENTS IN THE NORTHERN DISTRICT...................11

V.      THE COURT SHOULD PRELIMINARILY APPROVE THE
        SETTLEMENT BECAUSE IT IS "FAIR, REASONABLE AND
        ADEQUATE" UNDER RULE 23(E) (2) AND THE CHURCHILL FACTORS .........12

        A.      Class Counsel and Plaintiff Adequately Represented the Class...............12

B.    The Proposals Were Negotiated at Arm's Length ..................................................12

C.    The Relief Provided For the Class Is Adequate ....................................................12

    1.    The Relief for the Class is Adequate Given the Risks, and Delays of a Trial and Appeal. .............................................................................13

    2.    The Proposed Method of Distributing Relief to the Class is Effective. ...................................................................................................18

    3.    The Proposed Award of Attorney Fees is Fair. .........................................18

    4.    Any Agreement Required to be Identified Under Rule 23(e)(3)................20

D.    Class Members Will Be Treated Equitably Relative to One Another.....................20

VI.    THE NORTHERN DISTRICT'S PROCEDURAL GUIDANCE ...............................20

A.    Information About the Settlement.........................................................................20

    1.    Differences Between the Settlement Classes and the Plead Classes............20

    2.    Differences in the Claims to be Released and the Claims Pled or Certified.....................................................................................................22

    3.    The Class Recovery Under the Settlement.................................................22

    4.    Other Cases Affected by the Settlement. ..................................................22

    5.    The Proposed Allocation for the Settlement Fund ....................................22

    6.    Claim Form. ..............................................................................................22

    7.    Reversion to Defendant. ...........................................................................23

B.    Settlement Administration...................................................................................23

C.    Notice. ...............................................................................................................23

D.    Opt Outs. ...........................................................................................................23

E.    Objections...........................................................................................................24

F.    Attorney Fees and Costs......................................................................................24

G.    Service Award. ...................................................................................................24

H.    Cy Pres. ..............................................................................................................24

I.    Timeline. ............................................................................................................25

J.    Class Action Fairness Act (CAFA) and Similar Requirements. ...........................25

K.    Comparable Outcomes. ......................................................................................25

L.    Electronic Versions. ....................................................................................25

M.    Overlapping Cases.......................................................................................25

VII.    **THE PAGA ALLOCATION IS PROPER**...............................................**25**

VIII.    **THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES, AND APPOINT PLAINTIFF AND CLASS COUNSEL TO REPRESENT THEM** ...........**26**

A.    The Settlement Classes Should Be Conditionally Certified For Purposes of Settlement.......................................................................................................26

   1.    Standard for Conditional Class Certification Upon Settlement ...................26

   2.    Numerosity ..................................................................................................27

   3.    Adequacy of Representation .......................................................................27

   4.    Typicality .....................................................................................................27

   5.    Commonality................................................................................................27

   6.    Predominance and Superiority ...................................................................28

IX.    **CONCLUSION**.................................................................................................**28**

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ........................................................ 26

*Chavez v. Netflix, Inc.,*
    162 Cal. App. 4th 43 (2008)..................................................................................................... 18

*Choate v. Celite Corp.* (2013) 215 Cal. App.4th 1460 ................................................................. 16

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004)................................................................................................... 11

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992).................................................................................................. 10

*Dilts v. Penske Logistics* (S.D. Cal. 2014) LLC  2014 WL 205039............................................. 15

*Duran v. US Bank Nat'l Ass'n* (2014) 59 Cal.4th 1, 39 & fn. 33 ("Duran") ................................. 15, 16

*Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL 8150856, at
    *15 (C.D. Cal. July 21, 2008) ................................................................................................. 19

*NVIDIA GPU Litig.*, 539 F. App'x 822 (9th Cir. 2013) .............................................................. 12

*Syncor ERISA Litig.*,516 F.3d 1095 (9th Cir. 2008).................................................................... 10

*Washington Public Power Supply Sys. Sec. Litig.,* 19 F.3d ......................................................... 18

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)................................. 12

*Miller v. CEVA Logistics U.S.A., Inc.* (E.D. Cal. Feb. 19, 2015) 2015 WL 729638 ..................... 13

*Morillion v. Royal Packing Co.* (2000) 22 Cal. 4th 575 ............................................................... 16

*Norton v. LVNV Funding, LLC,*
    2021 WL 3129568 (N.D. Cal. 2021).......................................................................................... 12

*NVIDIA GPU Litig.*, 539 F. App'x 822, 825 (9th Cir. 2013) ...................................................... 12

*O'Connor v. Uber Technologies, Inc.*, 201 F.Supp.3d 1110, 1135 (N.D. Cal. 2016).................... 25

*Parkinson v. Hyundai Motor Am.,*
    258 F.R.D. 580 (C.D. Cal. 2008) ............................................................................................ 27

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008) .................................. 27

*Quantum Health Resources, Inc.* 962 F. Supp. 1254, 1257 (1997) .............................................. 19

*Rodriguez v. West Publishing Corp.* (9th Cir. 2000) 563 F.3d 948 .............................................. 13

*Saechao v. Landrys, Inc.*, 2016 WL 3227180, *3 (N.D. Cal. June 11, 2016)................................ 26

*Sephora Wage and Hour Cases*, JCCP No. 4911 ........................................................................ 25

1   *Singletary v. Teavana Corporation* (N.D. Cal. May 2, 2014) ............................................. 15

2   *Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)............................................. 10

3   *Viceral v. Mistras Group, Inc.*,
        2016 WL5907869 (N.D. Cal. 2016)...................................................................... 26

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048 (9th Cir. 2002) .............................. 18

*Washington Public Power Supply Sys. Sec. Litig.,* 19 F.3d at 1301 n.10 ...................... 18

**Statutes**

Cal. Lab. Code § 2699(e)(2) ............................................................................................ 26

Cal. Lab. Code § 2699(f)(2) ............................................................................................. 25

Lab. Code §§ 221 ............................................................................................................. 22

Lab. Code §§ 222 ............................................................................................................. 22

Lab. Code §§ 224 ............................................................................................................. 22

Labor Code § 226(e) ........................................................................................................ 16

Lab. Code §§ 351 ............................................................................................................. 22

Lab. Code §§ 1174 ........................................................................................................... 22

Lab. Code §§ 1198 ........................................................................................................... 22

Labor Code § 2699 ............................................................................................... 13, 16, 17

Labor Code § 2699(e)(1) .................................................................................................. 16

Labor Code § 2699(e)(2) ............................................................................................ 17, 26

Labor Code § 2699(f)(2) .................................................................................................. 25

**Rules**

Fed. R. Civ. P.  23 .......................................................................................................... 26

Fed. R. Civ. P. 23(a) ................................................................................................... 26, 27

Fed. R. Civ. P. 23(a)(1) ................................................................................................... 27

Fed. R. Civ. P. 23(a)(2) ................................................................................................... 27

Fed. R. Civ. P. 23(a)(3) ................................................................................................... 27

Fed. R. Civ. P. 23(a)(4) ................................................................................................... 27

Fed. R. Civ. P. 23(b)(3) ................................................................................................... 26

Fed. R. Civ. P. 23(e)(2)(C) .............................................................................................. 12

Fed. R. Civ. P. 23(e)(1)(A) .............................................................................................. 11

Fed. R. Civ. P.  23(e) ................................................................................................. 11, 12

Fed. R. Civ. P. 23(e)(1)(B) .............................................................................................. 11

Fed. R. Civ. P. 23(e)(2) ......................................................................................... 11, 12, 20

Fed. R. Civ. P. 23(e)(2)(B) .............................................................................................. 12

Fed. R. Civ. P. 23(e)(3) ......................................................................................... 11, 12, 19

Fed. R. Civ. P. 23(e)(2)(D) .............................................................................................. 20

Fed. R. Civ. P. 30(b)(6) ..................................................................................................... 3

# I.    INTRODUCTION

After years of litigation, discovery and motion practice, the parties have settled this class action and representative PAGA lawsuit. One settlement agreement was reached between Plaintiff and Defendant Pennsylvania VF Corporation.[1] A separate settlement agreement was reached between Plaintiff and Defendant Delta Galil USA, Inc.[2] The settlement agreements provide for Defendant Delta Galil USA, Inc. to provide $230,615.00 and Defendant Pennsylvania VF Corporation to provide $550,000.00. Defendants represent that there are approximately 255 individuals in the Delta Galil USA, Inc. settlement and approximately 583 individuals in the Pennsylvania VF Corporation settlement. No class member will have to make a claim, instead checks will be mailed directly to them. No money will revert to the Defendants.

The Settlements occurred as a result of extensive, arm's-length negotiations by experienced counsel after sufficient formal and informal written discovery and investigation into the facts with guidance of Mark Rudy, Esq., an experienced and well-respected class action mediator.  About a dozen depositions were conducted regarding this matter and a motion for class certification was filed and ruled on. Law and motion practice included a motion for removal, a motion to remand, a class certification motion, a motion for summary judgment and a motion to compel arbitration.

The Settlements seek to fully and finally settle and resolve all claims that were alleged or could have been alleged in the operative First Amended Complaint ("FAC") filed with the Court, individually and on behalf of the Class and on behalf of the Aggrieved Employees. The Settlement Classes contains all non-exempt employees who worked for Defendants in California in a warehouse or distribution center during the Pennsylvania VF Corporation Class Period (June 13, 2013 through the date of preliminary approval of the settlement) and/or during the Delta Galil USA, Inc. Class Period (August 26, 2016 through December 31, 2017).

Based upon their evaluation, Plaintiff and his counsel Setareh Law Group have determined that

---

[1] The Settlement Agreement between Plaintiff and Defendant VF Corporation and Amendment thereto is attached as Exhibit 1 to the declaration of Shaun Setareh.

[2] The Settlement Agreement between Plaintiff and Defendant Delta Galil and Amendment thereto is attached as Exhibit 2 to the declaration of Shaun Setareh.

the Settlement is fair, reasonable, adequate and in the best interest of the Class, and they request that this Court grant preliminary approval of the Settlement Agreements.

## II.     PROCEDURAL HISTORY

### A.          PLEADINGS

This lawsuit was filed on June 13, 2017 in Alameda Superior Court. ECF No. 1.1, Exh. D. Plaintiff filed a First Amended Complaint ("FAC") on August 16, 2017 adding a cause of action under PAGA. ECF No. 1.1, Exh. A. The FAC causes of action against Defendants for 1) Failure to provide meal periods; 2) Failure to provide rest periods; 3) Failure to pay hourly wages; 4) Failure to Indemnify; 5) Failure to provide accurate written wage statements; 6) Failure to timely pay all final wages; 7) Unfair Competition; and 8) PAGA. The FAC alleges that Defendants failed to pay wages for off-the-clock work performed as a result of security checks when employees enter and/or left the facility. The FAC further alleges that Defendants failed to provide lawfully compliant meal and rest breaks under California law as a result of (1) defective policies, (2) shortened and interrupted breaks due to mandatory security checks and (3) pressures of work. The FAC further alleges that Defendants failed to reimburse employees for the costs of driving their personal vehicles from warehouse to warehouse. *Id*.

### B.          MOTIONS

Defendants removed to federal court on December 28, 2018. ECF No. 1. Plaintiff filed a motion to remand on January 11, 2019. ECF No. 13.  Defendants filed their opposition to the motion to remand on January 25, 2019. ECF No. 15. This Court denied the motion on April 2, 2019. ECF No. 25.

On October 14, 2020, Plaintiff filed a motion for class certification. ECF No. 44. Defendant VF Corporation opposed the motion on December 23, 2020. ECF No. 59. Defendant Delta Galil opposed the motion on December 24, 2020. ECF No. 60. Plaintiff filed a reply brief on February 12, 2021. ECF No. 65. On March 30, 2021, the Court entered an Order denying the motion. ECF No. 74.

On November 20, 2020, Defendant VF Corporation moved for summary judgment. ECF No. 49. Plaintiff opposed the motion on December 14, 2020. ECF No. 55. VF Corporation filed a

reply brief on December 3, 2020. ECF No. 62. On February 16, 2021, the Court entered an Order denying the motion. ECF No. 66.

On November 20, 2020, Defendant VF Corporation moved to compel arbitration. ECF No. 48. Plaintiff opposed the motion on December 14, 2020. ECF No. 57. VF Corporation filed a reply brief on December 3, 2020. ECF No. 61. On February 16, 2021, the Court entered an Order denying the motion. ECF No. 66.

**C.**       **APPEAL**

On March 18, 2021, VF Corporation appealed to the Ninth Circuit the Court's order denying the motion to compel arbitration. ECF No. 69. The appeal case was assigned the Ninth Circuit Court of Appeals Case No. 21-15497. Setareh Decl. ¶ 14. The appeal was dismissed without prejudice pending approval of the settlement. Court of Appeals, Docket No. 27.

**D.**       **DISCOVERY**

While this action was pending in state court, Plaintiff served written discovery which Defendants responded to including producing hundreds of pages of documents. Setareh Decl. ¶ 5 Defendants also produced contact information for around 443 putative class members. *Id.*

Plaintiff Figueroa was deposed on November 5, 2018, December 1, 2020, and December 3, 2020.[3] *Id.* ¶ 7.

On September 24, 2020, Plaintiff deposed Delta Galil's Rule 30(b)(6) designee Denise Armendariz. *Id.* ¶ 8.

On October 8, 2020, Plaintiff deposed VF Corporation's Rule 30(b)(6) designee Mark Townsend. *Id.* ¶ 9.

On December 3, 2020, Defendants deposed Plaintiff's expert James Toney. *Id.* ¶ 12.

Defendants also deposed 8 putative class members who submitted declarations in support of Plaintiff's motion for class certification. *Id.* ¶ 13.

//

//

---

[3] The depositions on December 1, 2020 and December 3, 2020 were relatively short.

**E.**     **THE PARTIES' MEDIATION EFFORTS**

The parties attended mediation on December 5, 2019, with mediator Mark Rudy. Setareh Decl. ¶ 16. The case did not settle at mediation but the parties continued negotiations with the assistance of Mr. Rudy, ultimately resulting in the two settlement agreements presented to this Court for approval. *Id.*

**III.    SUMMARY OF SETTLEMENT TERMS**

**A.**     **VF CORPORATION SETTLEMENT**

**1.     Monetary Terms of Settlement.**

Pursuant to the Settlement Agreement between Plaintiff and VF Corporation ("VFSA") VF Corporation is paying $550,000 to resolve the class claims ("Maximum Settlement Number" or "MSN"). VFSA ¶ 13. That amount is the maximum amount VF Corporation will pay unless the escalator provision at paragraph 19 of the VFSA becomes applicable.

Out of the MSN, the following deductions will be made subject to court approval: 1) Attorney Fees of not more than 33.33% of the MSN or $183,333.33 (VFSA ¶ 14(a)); 2) Litigation Expenses of up to $25,000 but not to exceed the amount actually incurred[4] (*Id.* ¶ 14(b)); 3) a class representative incentive award in the amount of up to $10,000[5] (*Id.* ¶ 14(c)); 4) settlement administrator expenses of up to $20,000[6] (*Id.* 14(d)); and 5) for the PAGA claim, payment to the LWDA of $18,750 which is 75% of the PAGA allocation under the settlement. (*Id.* ¶ 14(e). The

---

[4] Plaintiff's counsel interprets the settlement agreements to mean that half of the litigation costs will be covered by the Delta Galil Settlement, and the other half of the litigation costs will be covered by the VF Settlement. Thus Plaintiff's counsel would receive a maximum of $25,000 for litigation costs, subject to Court approval.

[5] Plaintiff's counsel interprets the settlement agreements to mean that the maximum amount Plaintiff will be requesting as a service award is $10,000 in this case. Plaintiff's counsel intends to request that $5,000 be provided out of each settlement agreement so that Mr. Figueroa would receive $10,000 in total, subject to Court approval.

[6] Plaintiff's counsel interprets the settlement agreements to mean that half the cost of the settlement administration will be covered by the Delta Galil Settlement, and the other half of the settlement administration costs will be covered by the VF Settlement. Thus, Phoenix would receive a maximum of $20,000 for administration expenses between the two settlement agreements, subject to Court approval.

average estimated share of the NSA per Class Member in the VF Settlement is approximately

**$557.31**[7]. Plaintiff has obtained a significant monetary recovery for Class Members.

**2.    Settlement Class and PAGA Group Definitions.**

The Settlement Class is defined as "all hourly paid, non-exempt persons employed by VF Contemporary Brands, Inc. in the State of California during the class period who were employed in a warehouse or distribution center"[8]. VFSA ¶ 5. The class period is June 13, 2013, through the date of preliminary approval. *Id.* ¶ 4.

The PAGA Settlement Group is defined as "all hourly paid, non-exempt persons employed by VF Contemporary Brands, Inc. (including after its statutory conversion to VF Contemporary Brands, LLC) in the State of California during the PAGA Period (defined as April 1, 2016, through the date of preliminary approval). PAGA Settlement Group members will have no right to opt out of the PAGA portion of the settlement and will automatically receive their share of the PAGA payment." VFSA ¶ 15.

**3.    Settlement Class and PAGA Group Releases.**

The Settlement Class will release:

Pennsylvania V.F. Corporation, VF Corporation, VF Contemporary Brands, Inc., VF Contemporary Brands, LLC, DG Premium Brands LLC and Delta Galil USA, Inc. (in addition to their related entities) from all wage-and-hour claims asserted in the Action and any claims for:
(1) failure to pay all wages owed; (2) failure to pay minimum wage; (3) failure to pay overtime wages; (4) failure to provide meal and rest periods; (5) failure to reimburse business expenses; (6) unlawful deductions; (7) recordkeeping violations; (8) failure to provide itemized paystubs; (9) unfair business practices under California Business and Professions Code Section 17200 and any claims under California Labor Code Sections 201-204, 221-224, 226 et. seq., 226.7, 351, 510, 512, 1174, 1174.5, 1182.12, 1194, 1197, 1998, 2802. The time period of this release is June 13, 2013 through August 25, 2016.

---

[7] Calculated as: VFSA MSN of $550,000- $183,333.33 in attorney fees - $12,500 in attorney costs - $5,000 enhancement award - $5,500 settlement administrator costs - 18,750 in PAGA = $324,916.67. $324,916.67/ 583 VFSA class members = $557.31,

[8] The Class definition was revised by amendment of the parties in October 2023. See amendment to VFSA.

VFSA ¶ 20(a). (This release applies to claims arising before the date that ownership of the

company changed from VF Corporation to Delta Galil.[9]) The Settlement Class will also release:

> Pennsylvania V.F. Corporation and V.F. Corporation from all wage-and-hour
> claims asserted in the Action and any claims for:
> (1) failure to pay all wages owed; (2) failure to pay minimum wage; (3)
> failure to pay overtime wages; (4) failure to provide meal and rest periods; (5)
> failure to reimburse business expenses; (6) unlawful deductions; (7)
> recordkeeping violations; (8) failure to provide itemized paystubs; (9) unfair
> business practices under California Business and Professions Code Section 17200
> and any claims under California Labor Code Sections 201-204, 221-224, 226 et.
> seq., 226.7, 351, 510, 512, 1174, 1174.5, 1182.12, 1194, 1197, 1998, 2802. The
> time period of this release August 26, 2016 to the date of preliminary approval.

VFSA ¶ 20(b).

The VF agreement also provides that Delta Galil will have no release arising from claims

after the acquisition on August 25, 2016, except a release for claims for waiting time penalties

based on unpaid wages that accrued prior to the acquisition. VFSA ¶ 20(c).

PAGA Group Members also release:

> [C]laims against Defendant VF, and VF Corporation under the California Private
> Attorneys' General Act for the PAGA Period and against VF Contemporary
> Brands, Inc. (including after its statutory conversion to VF Contemporary Brands,
> LLC) from the commencement of the PAGA Period until the date of preliminary
> approval, any claims asserted in the Action and claims based on the statutes set
> forth in this paragraph.

*Id.* ¶ 20(d).

### 4.    Settlement Administration and Notice.

No claim form will be required to receive a Settlement Share. Instead, payments will be

mailed to all Settlement Class Members who do not request exclusion. VFSA ¶ 42.

Settlement Class Members will have 45 days from the date of mailing of notice to submit

an objection to or request to be excluded from the settlement. *Id.* ¶¶ 27-28.

Settlement Class Members will also have 45 days to dispute their Settlement Share

including submitting any documentation. *Id.* ¶ 30.

//

---

[9] VF was acquired by Delta Galil in August 2016. Setareh Decl. ¶ __.

**5.      Allocation of Settlement Payments.**

The Settlement Share of Settlement Class Members will be calculated by the Administrator assigning to each Class Member a "Settlement Ratio" which is a fractional number comprised of their Individual Work Weeks as the numerator and the aggregate total of all Class Members' Individual Work Weeks as the denominator. The Administrator will calculate the Settlement Share by multiplying the Class Member's Settlement Ratio by the amount allocated to Class Members from the Net Settlement Number. PAGA Settlement Group members will receive a pro rata share of the PAGA payment based on dividing the PAGA Payment by the number of PAGA Settlement Group members. VFSA ¶ 16(b). Each Settlement Share is allocated twenty percent to wages and eighty percent to interest and penalties. VFSA ¶ 16(a).

**6.      Disposition of Uncashed Checks.**

Class members will have 180 days to cash their settlement checks. Any uncashed settlement checks will be sent to a cy pres recipient subject to court approval. VFSA ¶ 43. The parties propose Bay Area Legal Aid as the cy pres recipient. Setareh Decl. ¶ 27.

**B.      DELTA GALIL SETTLEMENT**

**1.      Monetary Terms of Settlement.**

Pursuant to the Settlement Agreement between Plaintiff and Delta Galil ("DGSA") Delta Galil is paying $230,615 to resolve the class claims ("Maximum Settlement Number" or "MSN"). (DGSA ¶ 13.) That amount is the maximum amount Delta Galil will pay unless the escalator provision at paragraph 19 of the DGSA becomes applicable.

Out of the MSN, the following deductions will be made subject to court approval: 1) Attorney Fees of not more than 33.33% of the MSN or $76,871.66[10] (DGSA ¶ 14(a)); 2) Litigation Expenses of up to $25,000 but not to exceed the amount actually incurred (but the amount

---

[10] Although the DGSA allows for attorney fees up to 35% of the MSN, Plaintiff's counsel intends to request attorneys fees of 33.33%, subject to Court approval.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

1    awarded in connection with the VF settlement will be deducted)[11] (*Id.* ¶ 14(b)); 3) a class

2    representative incentive award in the amount of up to $10,000 (but the amount awarded in

3    connection with the VF settlement will be deducted)[12] (*Id.* ¶ 14(c)); 4) settlement administrator

4    expenses of up to $20,000 (but the amount awarded in connection with the VF settlement will be

5    deducted)[13] (*Id.* 14(d)); and 5) for the PAGA claim, payment to the LWDA of $15,000 which is

6    75% of the PAGA allocation under the settlement. (*Id.* ¶ 14(e)). The average estimated share of the

7    NSA per Class Member in the Delta Galil Settlement is approximately **$514.41[14]**. Plaintiff has

8    obtained a significant monetary recovery for Class Members.

9           **2.**      **Settlement Class and PAGA Group Definitions.**

10         The Settlement Class is defined as "all hourly paid, non-exempt warehouse and

11    distribution employees who were employed by DG Premium Brands ("DGPB") in the State of

12    California during the class period". DGSA ¶ 5. The class period is August 26, 2016, through and

13    including December 31, 2017. *Id.* ¶ 4.

14         The PAGA Settlement Group is defined as "all hourly paid, non-exempt warehouse and

15    distribution employees employed by DG Premium Brands, LLC, f/k/a VF Contemporary Brands,

16    LLC, f/k/a VF Contemporary Brands, Inc. in the State of California during the PAGA period

17    (defined as August 26, 2016 through and including December 31, 2017). PAGA Settlement Group

18

19

---

20    [11] Plaintiff's counsel interprets this to mean that half of the litigation costs will be covered by the
Delta Galil Settlement, and the other half of the litigation costs will be covered by the VF

21    Settlement. Thus, Plaintiff's counsel would receive a maximum of $25,000 for litigation costs,
subject to Court approval.

22    [12] Plaintiff's counsel interprets this to mean that the maximum amount Plaintiff will be requesting
as a service award is $10,000 in this case. Plaintiff's counsel intends to request that $5,000 be

23    provided out of each settlement agreement so that Mr. Figueroa would receive $10,000 in total,
subject to Court approval.

24    [13] Plaintiff's counsel interprets this to mean that half the cost of the settlement administration will
be covered by the Delta Galil Settlement, and the other half of the settlement administration costs

25    will be covered by the VF Settlement. Thus, Phoenix would receive a maximum of $20,000 for
administration expenses between the two settlement agreements, subject to Court approval.

26    [14] Calculated as: DGSA MSN of $230,615 - $76,871.66 in attorney fees - $12,500 in attorney
costs - $5,000 enhancement award - $5,500 settlement administrator costs - 15,000 in PAGA =

27    $115,743.34. $115,743.34/ 225 DGSA class members = $514.41.

28

1  members will have no right to opt out of the PAGA portion of the settlement and will

2  automatically receive their share of the PAGA payment." DGSA ¶ 16.

### 3.    Settlement Class and PAGA Group Releases.

The Settlement Agreement defines the "Released Parties" as:

(i) Defendant Delta Galil USA, Inc.; (ii) Defendant's past, present and future
parents, subsidiaries and affiliate including, without limitation, DG Premium
Brands LLC f/k/a VF Contemporary Brands, LLC f/k/a VF Contemporary
Brands, Inc. and any other corporation, limited liability company, partnership,
trust, foundation and non-profit entity which controls, is controlled by, is under
common ownership with or provides management services to either Defendant or
DGPB; (iii) the past, present and future shareholders, directors, officers, agents,
employees, attorneys, insurers, members, partners, managers, contractors, agents,
consultants, representatives, administrators, fiduciaries, benefit plans, transferees,
predecessors, successors and assigns of any of the foregoing; and (iv) any
individual or entity which could be jointly liable with any of the foregoing.

DGSA ¶ 15.

The Settlement Class will release:

[T]he Released Parties from all wage-and-hour claims asserted in the Action and
any claims for: (1) failure to pay all wages owed; (2) failure to pay minimum
wage; (3) failure to pay overtime wages; (4) failure to provide meal and rest
periods; (5) failure to reimburse business expenses; (6) unlawful deductions; (7)
recordkeeping violations; (8) failure to provide itemized paystubs; (9) unfair
business practices under California Business and Professions Code Section 17200
and any claims under California Labor Code Sections 201-204, 221-224, 226 et.
seq., 226.7, 351, 510, 512, 1174, 1174.5, 1182.12, 1194, 1197, 1998, and 2802.
The time period of this release is the Class Period.

DGSA ¶ 20(a).[15]

PAGA Group Members also release:

[C]laims against the Released Parties arising under the California Private
Attorneys' General Act based upon any alleged (1) failure to pay all wages owed;
(2) failure to pay minimum wage; (3) failure to pay overtime wages; (4) failure to

---

[15] The parties' amendment to the DGSA adds: "The Parties agree that to the extent that there are
claims for waiting time penalties asserted by Class Members based upon a failure to pay wages by
any Released Party during the Class Period, those claims are part of the release set forth in
subparagraph (a). The Parties also agree that to the extent that there are claims for civil penalties
asserted by the PAGA Settlement Group based upon an alleged violation of Labor Code section
203 which arises due to the failure to pay wages by any Released Party during the Class Period,
those claims are part of the release set forth in subparagraph (b).  In the interests of clarity, this
paragraph is intended to provide the Released Parties with a release for any waiting time penalty
claims and civil penalty claims which accrue upon termination but which are based solely upon
unpaid wages that accrued during the Class Period."

provide meal and rest periods; (5) failure to reimburse business expenses; (6) unlawful deductions; (7) recordkeeping violations; (8) failure to provide itemized paystubs; (9) unfair business practices under California Business and Professions Code Section 17200 and any claims under California Labor Code Sections 201-204, 221-224, 226 et. seq., 226.7, 351, 510, 512, 1174, 1174.5, 1182.12, 1194, 1197, 1998, and 2802. The time period of this release is the PAGA Period.

*Id.* ¶ 20(b).

### 4.    Settlement Administration and Notice.

No claim form will be required to receive a Settlement Share. Instead, payments will be mailed to all Settlement Class Members who do not request exclusion. DGSA ¶ 42.

Settlement Class Members will have 45 days from the date of mailing of notice to submit an objection to or request to be excluded from the settlement. *Id*. ¶¶ 27-28.

Settlement Class Members will also have 45 days to dispute their Settlement Share including submitting any documentation. *Id*. ¶ 30.

### 5.    Allocation of Settlement Payments.

The Settlement Share of Settlement Class Members will be calculated by the Administrator assigning to each Class Member a "Settlement Ratio" which is a fractional number comprised of their Individual Work Weeks as the numerator and the aggregate total of all Class Members' Individual Work Weeks as the denominator. The Administrator will calculate the Settlement Share by multiplying the Class Member's Settlement Ratio by the amount allocated to Class Members from the Net Settlement Number. PAGA Settlement Group members will receive a pro rata share of the PAGA payment based on dividing the PAGA Payment by the number of PAGA Settlement Group members. DGSA ¶ 17(b). Each Settlement Share is allocated twenty percent to wages and eighty percent to interest and penalties. DGSA ¶ 17(a).

### 6.    Disposition of Uncashed Checks.

Class members will have 180 days to cash their settlement checks. Any uncashed settlement checks will be sent to a cy pres recipient subject to court approval. DGSA ¶ 43. The parties propose Bay Area Legal Aid as the cy pres recipient. Setareh Decl. ¶ 27.

//

//

## IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS IN THE NORTHERN DISTRICT

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Federal Rule of Civil Procedure 23(e) sets forth a multi-step process for determining whether a proposed class action settlement should be preliminarily approved by the Court. The parties must first "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. Proc. 23(e)(1)(A). Then, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. Proc. 23(e)(1)(B). Federal Rule of Civil Procedure 23(e)(2), in turn, provides:

> "If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is ***fair, reasonable, and adequate*** after considering whether:
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other."[16]

---

[16] The Ninth Circuit Court of Appeals has identified eight factors district courts may also consider in evaluating the fairness and adequacy of a pending settlement: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of

(footnote continued)

*Id.* (emphasis added). As shown below, the settlement agreements here meet the Rule 23(e) factors, as well as the Northern District's Procedural Guidance on Class Action Settlements.

## V.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT BECAUSE IT IS "FAIR, REASONABLE AND ADEQUATE" UNDER RULE 23(e)(2) AND THE CHURCHILL FACTORS

### A.    Class Counsel and Plaintiff Adequately Represented the Class

Counsel representing the class must be qualified, experienced, and capable of conducting the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, the Setareh Law Group is a highly experienced and skilled Plaintiff's class action firm that worked efficiently and diligently before resolving the case. Setareh Decl. ¶¶ 31-33.

Class representatives are adequate where they have retained experienced counsel and have actively participated in the litigation. *See e.g. Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021). Here, class representative Francisco Figueroa was dedicated to this case and spent substantial time and resources assisting Class Counsel throughout this litigation. Setareh Decl. ¶ 24.

### B.    The Proposals Were Negotiated at Arm's Length

The proposed Settlement arises after years of litigation—and after a series of informed and non-collusive negotiations facilitated by a third-party mediator. *See* Fed. R. Civ. P. 23(e)(2)(B); *see also In re NVIDIA GPU Litig.*, 539 F. App'x 822, 825 (9th Cir. 2013).

### C.    The Relief Provided For the Class Is Adequate

The relief provided for the class is adequate, taking into account:

  (i)    the costs, risks, and delay of trial and appeal;

  (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii)    the terms of any proposed award of attorney's fees, including timing of

---

counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement ("***Churchill Factors***"). *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575–76 (9th Cir. 2004). Factors 1-4 and 6 are duplicative of the Rule 23(e) factors. As to factor 5, as detailed herein there has been extensive discovery. Factor 7 is not applicable, although the LWDA will receive notice of the settlement. Factor 8 will be relevant upon final approval when the class will have had the opportunity to request exclusion or object.

1     payment; and

2     (iv)    any agreement required to be identified under Rule 23(e)(3)

3   *See* Fed. R. Civ. P. 23(e) (2)(C).

4          **1.      The Relief for the Class is Adequate Given the Risks, and Delays of a Trial and Appeal.**

5          Plaintiff's counsel believe that the Settlement is in the best interest of the class members based

6   on their investigation and discovery, their detailed understanding of the issues raised, and the outcome

7   of extensive settlement negotiations.  (Setareh Decl., ¶ 19.)  Plaintiff's counsel balanced the Settlement

8   against the probable outcome of a renewed motion for class certification, liability, the range of

9   recovery at trial, the risks of losing a renewed motion for class certification, losing at trial, or not

10  recovering as much as provided by the proposed Settlement, as well as the difficulties and complexity

11  of the litigation, the lengthy process of litigating to judgment, and the various possible delays and

12  appeals.  (*Id.*)  If Defendant VF Corporation prevailed on their appeal that they filed in the Ninth Circuit,

13  the VF class would have received nothing. (*Id.*) The following chart provides the estimated potential

14  recovery on a class basis that Plaintiff believes he could reasonably achieve *if he were to prevail on all*

15  *his causes of action*[17]:

16

17

| Cause of Action | Estimated Potential Recovery[18] |
|---|---|
| Meal Period Claim | $1,030,905.00 |

18

19

20

21

22

---

23  [17] Civil penalties are estimated and interest is not included in this analysis. This is proper because, first, PAGA penalties are discretionary (see Lab. Code § 2699(e)(2) (the court in its discretion

24  "may award a lesser amount than the maximum civil penalty amount specified by this part…")), and courts evaluate the strength of a proposed settlement without taking potential penalties or

25  interest into consideration. (See *Rodriguez v. West Publishing Corp.* (9th Cir. 2000) 563 F.3d 948, 955; see also *Miller v. CEVA Logistics U.S.A., Inc.* (E.D. Cal. Feb. 19, 2015) 2015 WL 729638, at

26  *7(court utilized calculation of a defendant's exposure exclusive of interest and penalties to determine whether the settlement fell within the range of possible approval).)

27  [18] All numbers and calculations based on data sampling provided by Defendants and analyzed by an expert retained by Plaintiff prior to mediation.

28

| | |
|---|---|
| Rest Period Claim | $1,130,512.22 |
| Off-the-clock Claim | $254,116.21 |
| **Sub-Total Unpaid Wages** | **$2,415,533.00** |
| Labor Code § 203 Penalties | $1,286,836.80 |
| Labor Code § 226 Penalties | $734,750.00 |
| Failure to Reimburse | $352,048.50 |
| **TOTAL** | **$4,789,168.00** |
| PAGA Penalties | $3,336,000.00 |
| *Total if PAGA included* | **$8,125,168.00** |

(Setareh Decl., ¶ 18.)

Despite a total potential recovery of $2,415,533 on his unpaid wage, non-penalty class claims, and approximately 4.7 million on all class claims, including statutory penalties, Plaintiff recognized the challenges he would have to face establishing liability on the wage and hour claims and in the case in general considering the motion for class certification was denied. (*Id.*, ¶ 19.) Plaintiff estimates that his likelihood of prevailing on all his causes of action are extremely low and thus his likelihood of recovering over 4.7 million or anything close to that amount on behalf of a class is very unlikely. (*Id.*) For those claims, if any, that are certified for class treatment, Plaintiff must prevail at a trial on the

1    merits. (*Id.*)  In addition to having to prove that Plaintiff and other workers were not paid for all hours

2    worked, Plaintiff must establish willfulness with respect to his waiting time penalties claim under

3    Labor Code Section 203. (*Id.*)

4         With respect to the claims asserted on behalf of the Settlement Class in this case, there are

5    significant risks that support the reduced compromise amount. These risks include, but are not limited

6    to, the following:

7         (i)    The risk that Plaintiff would be unable to establish liability for allegedly unpaid

8    overtime wages. *See Duran v. US Bank Nat'l Ass'n* (2014) 59 Cal.4th 1, 39 & fn. 33 ("Duran"), *citing*

9    *Dilts v. Penske Logistics* (S.D. Cal. 2014) LLC  2014 WL 205039 (dismissing certified off-the-clock

10    claims based on proof at trial).  Defendant contends, e.g., that overtime was properly paid or not due or

11    owing across the putative Class as alleged by Plaintiff.

12         (ii)    The risk that Plaintiff would not be able to prove liability for alleged failure to provide

13    compliant meal and rest breaks; or that to establish liability for the failure to provide compliant rest

14    breaks would require an individualized inquiry that would prevent these issues from being resolved on

15    a class and/or collective basis.  Plaintiff alleged employees were regularly subject to meal break

16    violations. Defendants allege that many employees took their meal and rest breaks and that in order to

17    prove whether each employee took their meal periods and/or rest breaks would require an

18    individualized inquiry that would prevent this issue from being resolved on a class and/or collective

19    basis.

20         (iii)    The risk that Plaintiff would not recover waiting time and wage statement penalties

21    pursuant to Labor Code sections 203 and 226.  For example, Plaintiff might not prove that Defendants

22    acted with the intent necessary for the alleged claims for penalties under Labor Code sections 203 and

23    226.  For example, there is currently a split of authority as to whether such penalties can be obtained

24    based on failure to provide rest breaks. *See, e.g., Singletary v. Teavana Corporation* (N.D. Cal. May 2,

25    2014) 2014 WL 1760884, *4 (noting that "the law in this area is murky at best" and holding that

26    section 203 penalties are not applicable to meal and rest break claims).  Specifically, section 203

27    requires that a plaintiff show the employer committed a "willful" violation of the law in withholding

28    wages.  "A good faith dispute that any wages are due will preclude imposition of waiting time

penalties under Section 203." 8 Cal. Code Regs. § 13520. Similarly, penalties pursuant to section 226 require a "knowing and intentional" violation. Defendants contend that they would present several good faith defenses that would preclude a finding of willfulness under section 203. *See Choate v. Celite Corp.* (2013) 215 Cal. App.4th 1460 (reversing award of section 203 penalties based on good faith defense where underlying wage claim presented issue of first impression). Any such good faith dispute could preclude penalties.

(iv)    The risk that Defendants' challenged employment policies might not ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal.4th at 14 & fn. 28 (citing Court of Appeal decisions favorable on class certification issue without expressing opinion as to ultimate viability of proposition). Defendants have contended, for example, that the managers were unaware of the off-the clock work, and therefore had no reason to know or suspect that such off-the clock work was occurring. *See, e.g.*, *Morillion v. Royal Packing Co.* (2000) 22 Cal. 4th 575, 585 (employer not required to pay employees for time spent performing work of which the employer had no knowledge). Even if such a problem did exist, Defendants contend that they did not have such a policy, and therefore, it is not a systematic problem across Defendants' entire California workforce.

(v)    For the same reasons, liability, damages recovery, and certification risks are heightened given: (1) the risk that uncertainties pertaining to the ultimate legality of Defendants' policies and practices could preclude class-wide awards of statutory penalties under Labor Code section 226(e); (2) the risk that individual differences between settlement Class Members could be construed as pertaining to liability, and not solely to damages, *see*, *Duran*, 59 Cal.4th at 19; and (3) the risk that class or collective treatment could be deemed improper as to one or more claims except for settlement purposes. The Court here previously denied Plaintiff's motion for class certification.

(vi)    The risk that any civil penalties award under PAGA could be reduced by the Court in its discretion could materially impact the recovery by the Aggrieved Employees, *see* Labor Code section 2699(e)(1).

(vii)    The risk that lengthy appellate litigation could ensue as to both liability and certification issues, with associated litigation risk and costs, further enhances the value of a confirmed settlement as opposed to unpredictable litigation. If Defendant VF Corporation prevailed on their appeal

1  that they filed in the Ninth Circuit, the VF class would have received nothing.

2          (viii)    Although the PAGA penalties calculated by Plaintiff's expert amounts to an

3  extravagant $3,336,000.00, that amount is not likely to bear fruit in this case.  Most significantly, the

4  ultimate decision as to the amount of penalties is always up to the discretion of the Court.  Labor Code

5  § 2699(e)(2) states: "In any action by an aggrieved employee seeking recovery of a civil penalty

6  available under subdivision (a) or (f), a court may award a lesser amount than the maximum civil

7  penalty amount specified by this part if, based on the facts and circumstances of the particular case, to

8  do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory."

9  Subdivision (a) states, "Notwithstanding any other provision of law, any provision of this code that

10  provides for a civil penalty to be assessed and collected by the Labor and Workforce Development

11  Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a

12  violation of this code, may, as an alternative, be recovered through a civil action brought by an

13  aggrieved employee on behalf of himself or herself and other current or former employees pursuant to

14  the procedures specified in Section 2699.3."  Subdivision (f) specifies the penalties in instances where

15  the underlying statute does not specify any civil penalty.  In other words, where the facts and

16  circumstances of the particular case demonstrate that an unreduced award would be "unjust, arbitrary

17  and oppressive, or confiscatory," the court (or arbitrator) may reduce the award so as to ameliorate any

18  such finding.

19          In these respects, Defendants strongly deny any liability and the propriety of class certification

20  for any reason other than settlement. Continued litigation of this lawsuit presented Plaintiff and

21  Defendants with substantial legal risks that were (and continue to be) very difficult to assess.  (Setareh

22  Decl., ¶ 19.)

23          In light of the uncertainties of protracted litigation, the Settlement amounts reflects a fair and

24  reasonable recovery for the Class Members. (*Id.*, ¶ 20.) The Settlement amounts are, of course, a

25  compromise figure. (*Id.*)  By necessity, it took into account risks related to liability, damages, class

26  action certification, and all the defenses asserted by Defendants as to all such matters. (*Id.*)  Moreover,

27  each settlement Class Member will be given the opportunity to opt out of the Settlement, allowing

28  those who feel they have claims that are greater than the benefits they can receive under this

1    Settlement to pursue their own claims. (*Id.*)

2             **2.    The Proposed Method of Distributing Relief to the Class is Effective.**

3         The settlement provides that class members will be mailed checks directly and will not

4    need to submit a claim form. Class members will have 180 days to cash their settlement checks.

5    Any uncashed settlement checks will be sent to a cy pres recipient subject to court approval.

6    VFSA ¶ 43. The parties propose Bay Area Legal Aid as the cy pres recipient. Setareh Decl. ¶ 27.

7             **3.    The Proposed Award of Attorney Fees is Fair.**

8         The Ninth Circuit "benchmark" for fees is 25% of the fund, but courts may award a higher

9    percentage when merited. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048 (9th Cir. 2002).

10   In appropriate cases, state and federal courts applying the percentage-of-recovery method

11   frequently award 33- 1/3% of the common fund. *See, e.g., Chavez v. Netflix, Inc.,* 162 Cal. App.

12   4th 43, 66 n.11 (2008) (empirical studies show that California fee awards generally average

13   around one-third of the recovery).

14        Courts regularly apply a multiplier to the base lodestar to reflect the risks involved, the

15   complexity of the litigation, the length of the case, and other relevant factors. (*See Vizcaino*, 290

16   F.3d at 1051 (courts "routinely enhance[] the lodestar to reflect the risk of non-payment in

17   common fund cases").

18        In addition to the evaluation of "awards made in similar cases" (discussed above), the

19   Court may consider (1) the results achieved; (2) the risk of litigation; (3) the skill required and the

20   quality of the work; (4) the contingent nature of the fee and the financial burden carried by the

21   Plaintiffs. See *Vizcaino supra* at 1048-50.

22        Plaintiff's Counsel have shown their dedication to this case by devoting a substantial

23   percentage of their resources, and committing to the long-term litigation of this action in the face

24   of great opportunity costs.

25        The second and third factors (i.e. "the risk of litigation"; and, the "skill required and the

26   quality of the work", respectively) are largely intertwined. *In re Washington Public Power Supply*

27   *Sys. Sec. Litig.,* 19 F.3d at 1301 n.10.

28

1    Here, Class Counsel faced risk in pursuing this litigation that was only overcome by their

2    skill and experience in the field of wage and hour class actions. Setareh Decl. ¶ 19.

3    Plaintiff's Counsel also clearly faced substantial risks associated with filing a renewed

4    motion for class certification, when the previous motion for class certification was denied. These

5    numerous exceptional risks faced by Counsel, coupled with their deft skill in keeping this litigation

6    on course towards trial until a settlement was reached, clearly justify the 33.33% award

7    contemplated by the settlement agreements. *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-

8    04149 MMM SHX, 2008 WL 8150856, at *15 (C.D. Cal. July 21, 2008) ("Given the novel legal

9    issues raised, the court concludes that the circumstances warrant an award" of 34%).

10    Further, in order to obtain a class recovery in the case given the Court's denial of class

11    certification, Plaintiff would have needed either to convince the Court to reconsider its Order or

12    alternatively, take the case to trial individually (and on the PAGA claim) and appeal the class

13    certification order from the final judgment.

14    The fourth factor (*i.e.* "the contingent nature of the fee and the financial burden carried by

15    the Plaintiffs) also clearly weighs in favor of the contemplated attorney fee award. *In re Quantum*

16    *Health Resources, Inc.* 962 F. Supp. 1254, 1257 (1997). Here, Class Counsel undertook all of the

17    risks of this litigation on a contingent fee basis. They also faced the risks involved in litigating this

18    case for years and spending thousands of dollars in costs, without any guarantee of future pay or

19    reimbursement.

20    In addition to these hard costs, Plaintiff's Counsel committed significant attorney hours

21    to the action. Plaintiff has been faced with repeated major and dispositive litigation regarding

22    removal, remand, class certification briefing, a motion for summary judgment and a motion to

23    compel arbitration. VF filed an appeal to the ninth circuit. Plaintiff Figueroa was deposed on 3

24    dates, both Defendants were deposed, Plaintiff's expert was deposed and Defendants also deposed

25    8 putative class members who submitted declarations in support of Plaintiff's motion for class

26    certification. Setareh Decl. ¶¶ 7-9, 12-13 . Again, all of these important resources were willingly

27    committed by Plaintiff's Counsel knowing that they risked recovering nothing.

28    //

**4.       Any Agreement Required to be Identified Under Rule 23(e)**Error! Bookmark not defined.**(3).**

Other than the Settlement Agreements, and the amendments to them, there are no such agreements. Setareh Decl. ¶ 21.

**D.       Class Members Will Be Treated Equitably Relative to One Another**

Rule 23(e)**Error! Bookmark not defined.**(2)(D) requires a court to determine whether the "proposal treats class members equitably relative to each other." For this factor, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.

The Settlement Share of Settlement Class Members will be calculated by the Administrator assigning to each Class Member a "Settlement Ratio" which is a fractional number comprised of their Individual Work Weeks as the numerator and the aggregate total of all Class Members' Individual Work Weeks as the denominator. The Administrator will calculate the Settlement Share by multiplying the Class Member's Settlement Ratio by the amount allocated to Class Members from the Net Settlement Number. PAGA Settlement Group members will receive a pro rata share of the PAGA payment based on dividing the PAGA Payment by the number of PAGA Settlement Group members. VFSA ¶ 16(b); DGSA ¶ 17(b). Such a distribution is inherently just, fair and reasonable.

**VI.    THE NORTHERN DISTRICT'S PROCEDURAL GUIDANCE**

**A.       Information About the Settlement.**

**1.       Differences Between the Settlement Classes and the Plead Classes.**

The FAC includes an Hourly Class and UCL class defined as:

> Hourly Class: All persons employed by Defendants and/or any staffing agencies and/or any other third parties who worked in hourly or non-exempt positions in California during the Relevant Time Period.

> UCL Class: All Hourly Class members employed by Defendants in California during the Relevant Time Period.

1   The Relevant time period in the FAC is defined as "the time period beginning four years prior to

2   the filing of this action until judgment is entered." (ECF No. 1.1). Thus, the relevant time period

3   would begin June 13, 2013.

4        The VF Settlement Class is defined as "all hourly paid, non-exempt persons employed by

5   VF Contemporary Brands, Inc. in the State of California during the class period who were

6   employed in a warehouse or distribution center". VFSA ¶ 5. The class period is June 13, 2013,

7   through the date of preliminary approval. *Id.* ¶ 4.

8        The VF settlement class differs from the class definition in the FAC in that the VF

9   settlement class does not include persons employed by any staffing agencies and/or third parties.

10  This is because in opposing class certification, Defendants provided evidence that the staffing

11  agency employees working on the premises were covered by an arbitration agreement. Setareh

12  Decl. ¶ 11.

13       The VF settlement class differs from the class definition in the class period end date. As

14  defined in the complaint, the classes ended as of the date of judgment. In reality, if a class was

15  certified, the class definition would only include people employed as of the time of class

16  certification. Therefore, it makes sense to end the class period as of preliminary approval.

17       The VF settlement class differs from the class definition in the FAC in that the settlement

18  agreement limits the class to those employed in a warehouse or distribution center. This is to

19  provide clarification of the class definition, so that the class only includes people subject to the

20  security check practices at issue.

21       The Delta Galil Settlement Class is defined as "all hourly paid, non-exempt warehouse

22  and distribution employees who were employed by DG Premium Brands ("DGPB")  in the State

23  of California during the class period". DGSA ¶ 5. The class period is August 26, 2016, through

24  and including December 31, 2017. *Id.* ¶ 4.

25       The Delta Galil settlement class differs from the class definition in the FAC in that the

26  Delta Galil settlement class does not include persons employed by any staffing agencies and/or

27  third parties. This is because in opposing class certification, Defendants provided evidence that the

28  staffing agency employees working on the premises were covered by an arbitration agreement.

The start date and end date of the class period in the Delta Galil settlement differs from the FAC as well. The settlement class period for the Delta Galil settlement begins later due to the fact that VF was acquired by Delta Galil in August 2016. Setareh Decl. ¶ 10.

The Delta Galil settlement class differs from the class definition in the FAC in that the settlement agreement limits the class to those employed in a warehouse or distribution center. This is to provide clarification of the class definition, so that the class only includes people subject to the security check practices at issue.

### 2. Differences in the Claims to be Released and the Claims Pled or Certified.

The Settlements releases includes a release under Lab. Code §§ 221, 222, 224, 351, 1174, 1198 (mistyped 1998), which are not pled in the FAC. VFSA ¶ 20; DGSA ¶ 20. This is to provide Defendants with a global peace. Labor code §§ 221, 222, 224, 351 and 1198 regarding collecting wages from employees, collective bargaining agreements, tips, and maximum hours worked have no applicability here. Labor Code § 1174 regarding the employer's record keeping was not plead in the FAC because it does not give rise to recovery on its own right, but if the employer does not keep accurate records, the burden shifts to the employer to prove that wage and hour violations were not occurring.

### 3. The Class Recovery Under the Settlement.

The class recovery under the Settlement Agreements are discussed in section III A(1) and III B(1) *supra.*

### 4. Other Cases Affected by the Settlement.

Both Defendants have represented that there are no other cases affected by the settlement. Setareh Decl. 21.

### 5. The Proposed Allocation for the Settlement Fund

The settlement fund allocation is described in section III A(5) and III B(5) *supra.*

### 6. Claim Form.

Not applicable. The settlement contemplates mailing checks to settlement class members without the necessity of a claim form.

//

**7.    Reversion to Defendant.**

Not applicable. The settlement is non-reversionary. Any residue from uncashed checks will go to cy pres.

**B.    Settlement Administration**

The parties obtained settlement administration quotes from Phoenix Class Action Settlement Administration, Simpluris Inc. and American Legal Claim Services LLC. Setareh Decl.¶ 25. The parties have decided to use Phoenix as the settlement administrator as they provided the most competitive bid. *Id.* Setareh Law Group has used Phoenix as an administrator for 12 cases over the last two years. Declaration of Michael Moore ("Moore Decl.") ¶ 19. Phoenix has procedures in place for securely handling class member data. *Id.* ¶¶ 11-14. Phoenix provided a "Will Not Exceed-Flat Fee Total" bid of $11,000. *Id.* ¶ 17. Class counsel believes this bid is fair given the size of the class and method of notice. Setareh Decl.¶ 26.  The cost of the settlement administrator will come out of the Maximum Settlement Numbers, subject to Court approval.

**C.    Notice.**

The Notice of Settlement of PAGA and Class Action suit is attached as Exhibit 3 to the Declaration of Shaun Setareh. Consistent with section 3 of the Procedural Guidance, the Notice provides contact information for Class Counsel (¶ 9); a website address for settlement class members to obtain further information and instructions on how to obtain further information on PACER (*Id.* at 9); the date and time of the final approval hearing (*Id.* at 8); and instructs class members to check the website or PACER to ensure the date and time of the final approval hearing have not changed. (*Id.*)

The Notice also uses the proposed language suggested in the Procedural Guidance regarding receiving more information. *Id.* at 9.

**D.    Opt Outs.**

The Notice advises class members that they can opt out by mailing a request to the administrator. It also advises them of the consequences of opting out, and sets forth information required for identification purposes including name, address, telephone number, and a signature. *Id.* at 6.

1

  **E.**   **Objections.**

2

  The Notice advises class members of the deadline to submit objections. *Id*. at 7. It also

3

instructs class members to include their name, address, telephone number, signature and a

4

statement of the grounds of the objection. *Id. 7.*

5

  **F.**   **Attorney Fees and Costs.**

6

  See discussion in section V C 3 *supra.*

7

  **G.**   **Service Award.**

8

  The VFSA provides for a class representative incentive award in the amount of up to

9

$10,000 (VFSA ¶ 14(c)). The DGSA provides for a class representative incentive award in the

10

amount of up to $10,000 (but the amount awarded in connection with the VF settlement will be

11

deducted) (DGSA ¶ 14(c)). Plaintiff's counsel interprets this to mean that the maximum amount

12

Plaintiff will be requesting as a service award is $10,000 in this case. Plaintiff's counsel intends to

13

request that $5,000 be provided out of each settlement agreement so that Mr. Figueroa would

14

receive $10,000 in total, subject to Court approval. This service payment to Plaintiff Mr. Figueroa

15

is warranted, as the settlements would not exist if not for the extensive time and effort he

16

contributed to the case. Mr. Figueroa was deposed on November 5, 2018, December 1, 2020, and

17

December 3, 2020. Setareh Decl. ¶ 7. Mr. Figueroa provided substantial assistance to Class

18

Counsel in developing the claims in this case, and provided relevant documents. Mr. Figueroa

19

participated in the mediation in this case and reviewed settlement documents. Setareh Decl. ¶ 24.

20

  **H.**   **Cy Pres.**

21

  Class members will have 180 days to cash their settlement checks. Any uncashed

22

settlement checks will be sent to a cy pres recipient subject to court approval. VFSA ¶ 43; DGSA

23

¶ 43. The parties propose Bay Area Legal Aid as the cy pres recipient. Setareh Decl. ¶ 27. Class

24

Counsel and Defense counsel do not have a relationship with the proposed cy pres. Setareh Decl.

25

¶¶ 28-29. Bay Area Legal Aid is an appropriate cy pres beneficiary. They provide low-income

26

clients with free civil legal assistance, including legal advice and counsel, effective referrals,

27

and legal representation. They are the largest civil legal aid provider serving seven Bay Area

28

counties. https://baylegal.org/what-we-do/.

I.      **Timeline.**

A proposed timeline for the Settlement is included in the Proposed Order filed concurrently herewith.

J.      **Class Action Fairness Act (CAFA) and Similar Requirements.**

Defendant will comply with CAFA. Setareh Decl. ¶ 22. On the date of filing this motion, Class Counsel uploaded a copy of this motion and exhibits including the Settlement Agreements to the LWDA website. Setareh Decl. ¶ 37.

K.      **Comparable Outcomes.**

The most recent comparable class settlement that Class Counsel has worked on involving claims for off-the-clock security checks is *Sephora Wage and Hour Cases*, JCCP No. 4911 which involved 13,908 class members and a $12,750,000 non-reversionary common fund.

L.      **Electronic Versions.**

Upon filing of this motion, Class Counsel will submit Word versions of the Proposed Order and Settlement Notice.

M.      **Overlapping Cases.**

Both Defendants have represented that there are no other cases affected by the settlement. Setareh Decl. ¶ 21.

## VII.   THE PAGA ALLOCATION IS PROPER

PAGA provides for a $100 per employee per pay period penalty for the "initial" violation and $200 per employee per pay period for "subsequent" violations. Cal. Lab. Code § 2699(f)(2).

The VFSA provides for payment to the LWDA of $18,750 which is 75% of the PAGA allocation under the settlement. (VFSA ¶ 14(e).) The DGSA provides for payment to the LWDA of $15,000 which is 75% of the PAGA allocation under the settlement. (DGSA ¶ 14(e).)

Admittedly, the PAGA allocation is a small percentage of the possible exposure (1.34% of what realistically might be awarded). However, Plaintiff submits that is permissible in this case because the settlement of the underlying wage and hour claims is robust, and that serves the deterrent purpose of the PAGA statute. *O'Connor v. Uber Technologies, Inc.*, 201 F.Supp.3d 1110, 1135 (N.D. Cal. 2016): "By providing fair compensation to the class members as employees

1  and substantial monetary relief, a settlement not only vindicates the rights of class members as

2  employees but may have a deterrent effect upon the defendant employe and other employers, an

3  objective of PAGA."

4      Courts have routinely approved similar PAGA allocations. *Viceral v. Mistras Group, Inc.*,

5  2016 WL5907869 (N.D. Cal. 2016) (0.15%);  *Saechao v. Landrys, Inc.*, 2016 WL 3227180, *3 (N.D.

6  Cal. June 11, 2016) (approving settlement of PAGA claim for $12,000, or 1.3% of the estimated total

7  PAGA value of $921,000, according to the plaintiff's expert).

8      This is because trial courts have broad discretion to reduce the amount of PAGA penalties if the

9  award would be: "unjust, arbitrary and oppressive or confiscatory." Cal. Lab. Code § 2699(e)(2). The

10  PAGA allocation should be approved.

11  **VIII.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES, AND APPOINT PLAINTIFF AND CLASS COUNSEL TO REPRESENT THEM**

12      **A.  The Settlement Classes Should Be Conditionally Certified For Purposes of Settlement**

13

14          **1.  Standard for Conditional Class Certification Upon Settlement**

15      Parties seeking class certification for settlement purposes must still generally satisfy the

16  requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S.

17  591, 620 (1997). To maintain a class action under Rule 23(a), a plaintiff must demonstrate: (1)

18  numerosity: the class is so numerous that joinder of all members is impracticable, (2) adequacy of

19  representation: the representative parties will fairly and adequately protect the interests of the

20  class, (3) typicality: the claims or defenses of the representative parties are typical of the claims or

21  defenses of the class, and (4) commonality: there are questions of law or fact common to the class.

22  In addition to these requirements, a plaintiff must satisfy one of the Rule 23(b) prongs to maintain

23  a class action. Under Rule 23(b)(3), the plaintiff must prove: "the questions of law or fact common

24  to class members predominate over any questions affecting only individual members, and that a

25  class action is superior to other available methods for fairly and efficiently adjudicating the

26  controversy." However, in the context of settlement, the Court "need not inquire whether the case,

27  if tried, would present intractable management problems . . . for the proposal is that there be no

28  trial." *Amchem supra* at 620.

### 2. Numerosity

To satisfy the numerosity requirement under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable". *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008). Defendants represent that there are approximately 255 individuals in the Delta Galil USA, Inc. settlement and approximately 583 individuals in the Pennsylvania VF Corporation settlement. Setareh Decl. ¶ 17.

### 3. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Here, Plaintiff and his counsel have no conflicts of interest with other class members and have and will prosecute the action vigorously on behalf of the class.

### 4. Typicality

Rule 23(a) likewise requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

Here, Plaintiff, as class representative, share with all other class members that he was employed as an hourly non-exempt employee by Defendants in California in a warehouse or distribution center during the relevant time period, he was subject to the same wage and hour practices being challenged by this litigation, and he alleges that he was in fact negatively affected by those practices. Accordingly, the typicality requirement is satisfied.

### 5. Commonality

The final requirement under Rule 23(a) is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiff alleges Class Members were subjected to a common practice in that Defendants: failed to pay them, inter alia, for missed meal periods, including premiums (FAC, ¶¶ 58-72), for rest periods, including premiums (*Id.*, ¶¶ 73-85), for all wages and overtime wages owed (*Id.*, ¶¶ 86-112), failed to reimburse for the use of personal vehicles (*Id.*, ¶¶ 113-118), failed to provide compliant wage statements (*Id.*, ¶¶ 119-124); and failed to pay all wages due upon separation of employment. (*Id.*, ¶¶ 125-135.) The Court accordingly should certify the Settlement Class for purposes of settlement under Rule 23(a).

///

**6.      Predominance and Superiority**

For settlement purposes common issues regarding the legality of Defendants' wage and hour practices predominate over any individualized issues. And, given the small size of any individual claims, class treatment is plainly superior to individual adjudication.

**IX.    CONCLUSION**

The Settlements are excellent, arrived at with enough litigation and discovery for the parties to accurately value the claims. Preliminary approval should be granted.

DATED:  October 30, 2023               **SETAREH LAW GROUP**

                                        */s/ Shaun Setareh*
                                        SHAUN SETAREH
                                        THOMAS SEGAL
                                        FARRAH GRANT
                                        Attorneys for Plaintiff
                                        FRANCISCO FIGUEROA