Shaun Setareh, Esq. (SBN 204514)
Thomas Segal, Esq. (SBN 222791)
Farrah Grant Esq. (SBN 293898)
**SETAREH LAW GROUP**
9665 Wilshire Blvd., Suite 430
Beverly Hills, California 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109
shaun@setarehlaw.com
thomas@setarehlaw.com
farrah@setarehlaw.com

Attorneys for Plaintiff
FRANCISCO FIGUEROA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO FIGUEROA, ON BEHALF OF HIMSELF, ALL OTHERS SIMILARLY SITUATED<br><br>Plaintiff,<br><br>v.<br><br>DELTA GALIL USA, INC., A DELAWARE CORPORATION; PENNSYLVANIA V.F. CORPORATION, A PENNSYLVANIA CORPORATION; AND DOES 1 THROUGH 50, INCLUSIVE<br><br>Defendants | Case No.: 3:18-cv-07796-RS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 23, 2024<br>Time: 1:30pm<br>Place: Courtroom 3 |

**TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

Please take notice that on May 23, 2024, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 3 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, Francisco Figueroa, on behalf of himself and all others similarly situated and the general public ("Plaintiff"), will and hereby does move the Court for an order finally approving the class action settlements in this matter.

Plaintiff's motion is based on this Notice, the following Memorandum of Points and Authorities, all other pleadings and papers on file in this action, and any oral argument or other matter that may be considered by the Court.

Dated:  April 18, 2024                              SETAREH LAW GROUP

                                    BY:  _/s/ Farrah Grant_
                                         SHAUN SETAREH
                                         THOMAS SEGAL
                                         FARRAH GRANT
                                         Attorney for Plaintiff,
                                         Francisco Figueroa

TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND ...................................................................................................... 2

       A.    PLEADINGS ................................................................................................ 2

       B.    MOTIONS .................................................................................................... 2

       C.    APPEAL ....................................................................................................... 3

       D.    DISCOVERY ............................................................................................... 3

       E.    THE PARTIES' MEDIATION EFFORTS .................................................. 4

III.   SUMMARY OF SETTLEMENT TERMS ............................................................. 4

IV.    COMPLETION OF NOTICE PROCESS ............................................................... 6

V.     THE CAFA AND PAGA NOTICE REQUIREMENTS HAVE BEEN SATISFIED ......... 7

VI.    THE SETTLEMENTS MERIT FINAL APPROVAL ............................................ 7

       A.    PLAINTIFF'S CLAIMS MERIT CLASS ACTION TREATMENT ......................... 8

             1.    Numerosity ......................................................................................... 9

             2.    Commonality and Predominance of Common Issues ......................... 9

             3.    Typicality ......................................................................................... 11

             4.    Adequate Representation ................................................................. 11

             5.    Superiority ........................................................................................ 12

       B.    THE SETTLEMENTS FALL SQUARELY WITHIN THE RANGE OF
             REASONABLENESS AND SHOULD BE FINALLY APPROVED ...................... 13

             1.    The Value of the Settlements to Class Members Is Fair, Reasonable and
                   Adequate .......................................................................................... 14

             2.    The Agreed Upon Fees and Costs Are Reasonable .......................... 17

                   a)    Plaintiff seeks reasonable fees and costs .................................. 17

             3.    The Enhancement Award Is Reasonable .......................................... 18

VII.   CONCLUSION ....................................................................................................... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**CASES**

*Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007) ........................................... 8

*Armored Car Anti-Trust Litigation*, 472 F. Supp. 1357 (N.D. GA 1979) ................................. 13

*Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980) ... 8

*Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598, 600 (N.D. Cal. 1993) .............. 9

*Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975) .................................................. 9, 10

*Burnthorne-Martinez v. Sephora USA Inc.*, Northern District of California Case No. 4:16-cv-02843-YGR .................................................................................................................................................. 17

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) .............. 11

*Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) ................................... 9

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ..... 10, 12

*Dilts v. Penske Logistics, LLC* 2014 WL 205039 (S.D. Cal. 2014) .......................................... 15

*Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39 & fn. 33 (2014) ("*Duran*") .......................... 15

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ......................................................... 8

*Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747, at *19 (M.D. Fla. 1998) ................. 12

*Fronda v. Staffmark Holdings, Inc.*, Northern District of California Case No. 3:15-cv-02315-MEJ. .... 17

*Garza v. Brinderson Constructors L.P.,* Northern District of California Case No. 5:15-cv-05742-EJD 17

*Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990) ............................................................. 13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ................................. 8, 9, 10, 11

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) .......................................... 11

*Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) .................... 14, 15

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ..................................... 18

*Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986) ....................................................... 9

*Linney v. Cellular Alaska Partnership*, 1997 WL 450064, *5 (N.D. Cal. 1997) ........................... 14, 15

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987) .................................................................................................................................................. 13

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625

(9th Cir. 1982) ........................................................................................................... 13

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ......................... 17

*Pridd v. Edelman*, 883 F.2d 438, 447 (6th Circuit 1989) ........................................................ 13

*Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) .................................................. 9

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ........ 17

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. PA 1978) .. 14

*Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ........................ 18

*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ................................................... 8, 13

*Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) ............. 12

*Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) .................................... 12

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ..................................... 7

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) ......................... 18

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ....................................... 17

*Wang v. Chinese Daily News*, 231 F.R.D. 602, 606 (C.D. Cal. 2005) ................................. 9, 10

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) ................... 10

**STATUTES**

28 U.S.C. § 1715(b) ............................................................................................................... 7

28 U.S.C. §§ 1332(d) ............................................................................................................. 7

28 U.S.C. §§ 1453(b) ............................................................................................................. 7

California Business & Professions Code § 17200 *et seq* ..................................................... 10

Labor Code § 226 ................................................................................................................ 10

Labor Code § 2699 .............................................................................................................. 15

Labor Code § 2699(e)(1) ..................................................................................................... 15

Labor Code § 203 ................................................................................................................ 15

Labor Code § 226(e) ............................................................................................................ 15

Class Action Fairness Act of 2005 ("CAFA") § 1715(b) ..................................................... 7

**TREATISES**

*Manual for Complex Litigation Second* § 30.44 (1985) ........................................................ 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    <u>INTRODUCTION</u>

After years of litigation, discovery and motion practice, the parties have settled this class action and representative PAGA lawsuit. One settlement agreement was reached between Plaintiff and Defendant Pennsylvania VF Corporation.[1] A separate settlement agreement was reached between Plaintiff and Defendant Delta Galil USA, Inc.[2] The settlement agreements provide for Defendant Delta Galil USA, Inc. to provide $230,615.00 and Defendant Pennsylvania VF Corporation to provide $550,000.00 for 584 class members in compromise of disputed wage claims asserted against Defendants. No class member will have to make a claim, instead checks will be mailed directly to them. No money will revert to the Defendants. Plaintiff negotiated an excellent result for the Settlement Classes. The estimated average settlement payment per class member is $713.16 and the estimated highest payment is $1,752.98.

The Settlements seek to fully and finally settle and resolve all claims that were alleged or could have been alleged in the operative First Amended Complaint ("FAC") filed with the Court, individually and on behalf of the Class and on behalf of the Aggrieved Employees. The Settlement Classes contain all non-exempt employees who worked for Defendants in California in a warehouse or distribution center during the Pennsylvania VF Corporation Class Period (June 13, 2013 through the date of preliminary approval of the settlement) and/or during the Delta Galil USA, Inc. Class Period (August 26, 2016 through December 31, 2017). Plaintiff's complaint alleges that Defendants did not: 1) provide class members with proper meal or rest breaks, 2) pay hourly wages, 3) indemnify employees and derivative claims and related penalties for such violations under the California Labor Code Private Attorney General Act ("PAGA"). Defendants dispute these claims.

After extensive discovery and significant motion practice, including about a dozen depositions, a

---

[1] The Settlement Agreement between Plaintiff and Defendant VF Corporation and Amendment thereto is attached as Exhibit 1 to the declaration of Shaun Setareh ISO the Motion for Preliminary Approval. (ECF No. 99-2, Exhibit 1).

[2] The Settlement Agreement between Plaintiff and Defendant Delta Galil and Amendment thereto is attached as Exhibit 2 to the declaration of Shaun Setareh ISO the Motion for Preliminary Approval. (ECF No. 99-2, Exhibit 2).

motion for removal, a motion to remand, a class certification motion, a motion for summary judgment and a motion to compel arbitration, the parties agreed to try and settle the case. The parties exchanged further data informally, and were able to settle this matter with the aid of mediator Mark Rudy. The parties reached the proposed class action settlements valued at $780,615.00 in total, and this Court preliminarily approved those settlements on December 21, 2023. The Parties believe the settlements to be fair and reasonable, to adequately reflect the potential liability, and the result of a thorough factual and legal analyses and arms-length negotiations.

Through this Motion, Plaintiff requests that the Court finally approve the proposed settlements.

## II.    BACKGROUND

### A.    PLEADINGS

This lawsuit was filed on June 13, 2017 in Alameda Superior Court. ECF No. 1.1, Exh. D. Plaintiff filed a First Amended Complaint ("FAC") on August 16, 2017 adding a cause of action under PAGA. ECF No. 1.1, Exh. A. The FAC causes of action against Defendants for 1) Failure to provide meal periods; 2) Failure to provide rest periods; 3) Failure to pay hourly wages; 4) Failure to Indemnify; 5) Failure to provide accurate written wage statements; 6) Failure to timely pay all final wages; 7) Unfair Competition; and 8) PAGA. The FAC alleges that Defendants failed to pay wages for off-the-clock work performed as a result of security checks when employees enter and/or left the facility. The FAC further alleges that Defendants failed to provide lawfully compliant meal and rest breaks under California law as a result of (1) defective policies, (2) shortened and interrupted breaks due to mandatory security checks and (3) pressures of work. The FAC further alleges that Defendants failed to reimburse employees for the costs of driving their personal vehicles from warehouse to warehouse. *Id.*

### B.    MOTIONS

Defendants removed to federal court on December 28, 2018. ECF No. 1. Plaintiff filed a motion to remand on January 11, 2019. ECF No. 13. Defendants filed their opposition to the motion to remand on January 25, 2019. ECF No. 15. This Court denied the motion on April 2, 2019. ECF No. 25.

On October 14, 2020, Plaintiff filed a motion for class certification. ECF No. 44. Defendant VF Corporation opposed the motion on December 23, 2020. ECF No. 59. Defendant Delta Galil opposed the motion on December 24, 2020. ECF No. 60. Plaintiff filed a reply brief

on February 12, 2021. ECF No. 65. On March 30, 2021, the Court entered an Order denying the motion. ECF No. 74.

On November 20, 2020, Defendant VF Corporation moved for summary judgment. ECF No. 49. Plaintiff opposed the motion on December 14, 2020. ECF No. 55. VF Corporation filed a reply brief on December 3, 2020. ECF No. 62. On February 16, 2021, the Court entered an Order denying the motion. ECF No. 66.

On November 20, 2020, Defendant VF Corporation moved to compel arbitration. ECF No. 48. Plaintiff opposed the motion on December 14, 2020. ECF No. 57. VF Corporation filed a reply brief on December 3, 2020. ECF No. 61. On February 16, 2021, the Court entered an Order denying the motion. ECF No. 66.

### C.    APPEAL

On March 18, 2021, VF Corporation appealed to the Ninth Circuit the Court's order denying the motion to compel arbitration. ECF No. 69. The appeal case was assigned the Ninth Circuit Court of Appeals Case No. 21-15497. Declaration of Shaun Setareh ISO Motion for Attorney Fees (ECF No. 110-1) ¶ 11. The appeal was dismissed without prejudice pending approval of the settlement. Court of Appeals, Docket No. 27.

### D.    DISCOVERY

While this action was pending in state court, Plaintiff served written discovery which Defendants responded to including producing hundreds of pages of documents. Declaration of Shaun Setareh ISO Motion for Attorney Fees (ECF No. 110-1) ¶ 2. Defendants also produced contact information for around 443 putative class members. *Id.*

Plaintiff Figueroa was deposed on November 5, 2018, December 1, 2020, and December 3, 2020.[3] *Id.* ¶ 4.

On September 24, 2020, Plaintiff deposed Delta Galil's Rule 30(b)(6) designee Denise Armendariz. *Id.* ¶ 5.

On October 8, 2020, Plaintiff deposed VF Corporation's Rule 30(b)(6) designee Mark

---

[3] The depositions on December 1, 2020 and December 3, 2020 were relatively short.

Townsend. *Id.* ¶ 6.

On December 3, 2020, Defendants deposed Plaintiff's expert James Toney. *Id.* ¶ 9.

Defendants also deposed 8 putative class members who submitted declarations in support of Plaintiff's motion for class certification. *Id.* ¶ 10.

### E.    THE PARTIES' MEDIATION EFFORTS

The parties attended mediation on December 5, 2019, with mediator Mark Rudy Declaration of Shaun Setareh ISO Motion for Attorney Fees (ECF No. 99-2) ¶ 16. The case did not settle at mediation but the parties continued negotiations with the assistance of Mr. Rudy, ultimately resulting in the two settlement agreements presented to this Court for approval. *Id.* During the mediation session, the parties negotiated extensively at arm's length. At all times, the parties' negotiations were adversarial, non-collusive and at arm's length.  (*Id.*)

Plaintiff and Class Counsel concluded, after taking into account the sharply disputed factual and legal issues involved in this Litigation, the risks attending further prosecution, the discovery and investigation conducted to date, and the substantial benefits received and to be received pursuant to the compromise and settlement of the Litigation, that settlement on the terms discussed herein is in the best interests of Plaintiff and the Classes. Declaration of Shaun Setareh ISO Motion for Attorney Fees (ECF No. 110-1) at ¶ 14.  Plaintiff and Class Counsel are mindful of the problems of proof they face, many of which were discussed during the mediation.  As such, Class Counsel believes that the settlements reached are fair to the Classes and confers substantial benefits on the Classes, providing all Class Members with recoveries in the near term.  Based on their evaluation, Class Counsel determined that the settlements discussed herein are in the best interest of the Classes.  (*Id.*)  The Agreements, if approved by the Court, will resolve the claims of the settlement classes.

### III.    SUMMARY OF SETTLEMENT TERMS

The full terms of the settlements are set forth in the settlement agreements at ECF No. 99-2, Exhibits 1-2.  The primary material terms are as follows:

1.    The settlement classes are defined as follows:

VF Settlement Class:

All hourly paid, non-exempt persons employed by VF Contemporary Brands, Inc. in the State of

California during the class period who were employed in a warehouse or distribution center. The class period is June 13, 2013, through the date of preliminary approval.

VF PAGA Settlement Group:

The PAGA Settlement Group is defined as "all hourly paid, non-exempt persons employed by VF Contemporary Brands, Inc. (including after its statutory conversion to VF Contemporary Brands, LLC) in the State of California during the PAGA Period (defined as April 1, 2016, through the date of preliminary approval).

Delta Galil Settlement Class:

All hourly paid, non-exempt warehouse and distribution employees who were employed by DG Premium Brands ("DGPB") in the State of California during the class period. The class period is August 26, 2016, through and including December 31, 2017.

Delta Gali PAGA Settlement Group:

All hourly paid, non-exempt warehouse and distribution employees employed by DG Premium Brands, LLC, f/k/a VF Contemporary Brands, LLC, f/k/a VF Contemporary Brands, Inc. in the State of California during the PAGA period (defined as August 26, 2016 through and including December 31, 2017).

2.      The total class action settlement amount is $780,615, inclusive of the following: (a) Payments to Participating Class Members; (b) Class Counsel's attorneys' fees and litigation costs, (c) Any Administration Costs, (d) Any Enhancement Award to the Plaintiff, and (e) The payment to the California LWDA.

3.      Each Class Member who does not opt out will be paid his/her share of the Net Settlement Sum.

        (a)      Class Counsel seeks an amount of $260,205 for Attorney's Fees. The settlement agreement between Plaintiff and Delta Galil allows for attorneys fees up to 35% of the MSN. Settlement Agreement between Plaintiff and Delta Galil ("DGSA")

¶ 14(a). The settlement agreement between Plaintiff and VF Corporation allows for attorneys fees up to 33.33% of the MSN. Settlement Agreement between Plaintiff and VF Corporation ("VFSA") ¶ 14(a). Plaintiff's counsel here respectfully requests attorneys fees of 33.33% for the settlement agreements, resulting in an attorney's fee award of $260,205.

(b)    Class Counsel seeks $25,000 for Costs.  Plaintiff's counsel interprets the settlement agreements to mean that half of the litigation costs will be covered by the Delta Galil Settlement, and the other half of the litigation costs will be covered by the VF Settlement. Thus, Plaintiff's counsel would receive a maximum of $25,000 for litigation costs, subject to Court approval. (VFSA ¶ 14(b); DGSA ¶ 14(b).)

(c)    Settlement Administration costs of $11,000, which will be paid out of the Settlement.

(d)    Plaintiff seeks a Class Representative enhancement award of $10,000.  (VFSA ¶ 14(c); DGSA ¶ 14(c).)

(e)    The sum of $33,750 shall be paid to the Labor and Workforce Development Agency to resolve claims arising under PAGA.  (VFSA ¶ 14(e); DGSA ¶ 14(e).)

(f)    If checks remain uncashed after 180 days, the amount of the Individual Settlement Award shall be considered unclaimed and sent to a cy pres beneficiary subject to Court approval.  (VFSA ¶ 43; DGSA ¶ 43.) The parties propose Bay Area Legal Aid as the cy pres recipient. (ECF No. 99-2: Declaration of Shaun Setareh ¶ 27.)

## IV.    **COMPLETION OF NOTICE PROCESS**

There was a delay in Defendants providing the class list information to the settlement administer Phoenix. On January 23, 2024 and February 26, 2024 Phoenix received data files from Defense counsel for 584 Class Members. ECF No. 110-3, Declaration of Yami Burns ("Burns Decl.") ¶ 3. Phoenix used the National Change of Address Database to update the mailing addresses. *Id.* ¶ 4. The notices were mailed to the class on March 1, 2024 by Phoenix. *Id.* ¶ 5. No notices were deemed to be undeliverable.

*Id.* ¶ 7. Phoenix has received no objections or requests for exclusion. *Id.* ¶¶ 7-8. As a result of the delay caused by Defendants' late production of the data, the motion for final approval is due only 3 days after the deadline for class members to object or opt out. Plaintiff will submit an updated administrators' declaration by May 8, 2024, informing the Court of whether any objections or requests for exclusion have been made.

## V.    THE CAFA AND PAGA NOTICE REQUIREMENTS HAVE BEEN SATISFIED

Defendants have provided notice pursuant to Section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA"), as this is a class action and was removed from state court pursuant to the CAFA removal provisions. 28 U.S.C. §§ 1332(d) and 1453(b). Defendants have represented that Pennsylvania VF Corporation's CAFA mailing went out on March 18, 2024 and Delta Galil's CAFA mailing went out on March 27, 2024. To prevent the final order being entered prior to 90 days after notice was required pursuant to 28 U.S.C. § 1715(b), due to the timing of Defendant Delta Galil's CAFA notice going out, Defendant Delta Galil requests that an order granting final approval not be entered before June 25, 2024. Plaintiff does not oppose this request from Defense counsel.

In addition, on or around October 31, 2023, Class Counsel gave notice of the settlements to the California Labor Workforce and Development Agency as required by PAGA. (ECF No. 99-2: Setareh Decl. ¶ 37.)

## VI.    THE SETTLEMENTS MERIT FINAL APPROVAL

The law favors settlement, particularly in class actions and other complex cases, where substantial resources can be conserved by avoiding the time, cost, and the rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).   These concerns apply in a case such as this, where allegedly wrongful practices potentially affected approximately 584 employees, in relatively small amounts.

Any settlement of class litigation must be reviewed and approved by the court.  This is done in two steps: (1) an early (preliminary) review by the court, and (2) a final review after notice has been distributed to the class for their comment or objections.  The *Manual for Complex Litigation Second* states at § 30.44 (1985):

A two-step process is followed when considering class settlements … if the proposed

> settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

When parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

"The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is '***within the range of possible approval***.' This hearing is not a fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980) [quoting Manual for Complex Litigation s 1.46, at 53-55 (West 1977)] (emphasis added). "[T]he district court must assess whether a class exists," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003), *i.e.*, whether the lawsuit qualifies as a class action under Rule 23. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)).

At the second stage of the approval process, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Armstrong*, 616 F.2d at 314; *see Staton*, 327 F.3d at 952; *see also* Rule 23(e)(C)(1), which provides that a court may finally approve a settlement of a class action if it finds after a hearing that the settlement is "fair, reasonable, and adequate" and Rule 23(e)(C)(4), which provides that any class member may object to a proposed settlement.

## A.    PLAINTIFF'S CLAIMS MERIT CLASS ACTION TREATMENT

The Court preliminarily certified this action for settlement purposes on December 21, 2023. (Dkt. No. 106). As set forth here, there is no reason to disturb that determination.

In determining the propriety of class certification, a court may not delve into the underlying merits of the claims. The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v.*

*Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

The Ninth Circuit has established that, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). A court "may not require plaintiffs to make a preliminary proof of their claim; it requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598, 600 (N.D. Cal. 1993). Under these standards, this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3).

### 1.        Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable." In determining whether joinder would be impracticable, a court may consider not only the sheer number of class members, *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (numbers alone may be dispositive), but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." *Wang v. Chinese Daily News*, 231 F.R.D. 602, 606 (C.D. Cal. 2005). "A class action may proceed upon estimates as to the size of the proposed class." *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986). *See also, In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact size, but demonstrated that class would "obviously be sufficiently numerous").

In this action, the Class is composed of 584 individuals. (Burns Decl., ¶ 3.) It is sufficiently numerous that the individual joinder of all members is impracticable.

### 2.        Commonality and Predominance of Common Issues

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." This commonality requirement is "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiff need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.* Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie,* 524 F.2d at 901 n.17.

In this litigation, all Class Members have shared a common interest in determining whether

Defendants underpaid the classes due to off-the-clock security checks; whether class members did not always receive the meal and rest breaks they are entitled to under California law; whether Defendants reimbursed employees for the costs of driving their personal vehicles from warehouse to warehouse; whether, as a result of these issues, the Defendants violated the itemized wage statement provisions of Labor Code § 226 by not providing accurate information as to wages; and whether Defendants' policies and practices violated California Business & Professions Code sections 17200 *et seq*.

Given the permissive standard that courts in the Ninth Circuit employ when determining commonality, certification of the Class for settlement purposes is appropriate as Rule 23(a)(2) is satisfied.

Once it is established that common issues of law or fact exist, for Rule 23(b)(3) purposes, the Court next examines whether those common issues predominate. The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001). When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. It is well settled that the need for determining differing amounts of damages suffered by different class members does not preclude class certification. *See*, *Blackie*, 524 F.2d at 905; *Wang*, 231 F.R.D. at 613.

There are common issues that may predominate over individual issues in this litigation. For example: (1) Whether Defendants underpaid the classes due to off-the-clock security checks; (2) Whether class members did not always receive the meal and rest breaks they are entitled to under California law; (3) Whether Defendants reimbursed employees for the costs of driving their personal vehicles from warehouse to warehouse; (4) Whether, as a result of these issues, Defendants violated the itemized wage statement provisions of Labor Code section 226 by not providing accurate information as to wages; and (5) Whether Defendants' policies and practices violated California Business & Professions Code sections 17200 *et seq*.

### 3.    Typicality

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class." This factor is also construed permissively. *See Hanlon*, 150 F.3d at 1019-20. Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." *Id*. at 1020. In other words, named plaintiffs need not be "identically situated" with all other class members. "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).

Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The typicality requirement is satisfied where "the named Plaintiffs raise the same Labor Code violations as other putative class members." *Id*. Here, Plaintiff is raising the same claims as the putative class members and no unique defenses applicable to Plaintiff have been identified that do not also exist as to other Settlement Class Members.

### 4.    Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation turns on whether the named plaintiff and his counsel "have any conflicts of interest with other class members," and whether the named plaintiff and his counsel will "prosecute the action vigorously on behalf of the class." Adequacy may be established by the mere fact that counsel are experienced practitioners. *Hanlon*, 150 F.3d at 1020.

There are no conflicts of interest between Plaintiff and Class Members. The similarity of the claims asserted and remedies sought by Class Members and Plaintiff do not suggest any divergent interests held by Plaintiff. Defendants did not assert unique defenses against Plaintiff that they could not assert against any other Class Member. Also, there are no conflicts with Plaintiff's counsel.

Plaintiff's counsel has substantial class action experience and can adequately represent the Class. They have been appointed class counsel in many wage and hour class actions against major employers. (ECF. No. 110.1: Setareh Decl., at ¶¶ 17-19.)

###### 5.    Superiority

In deciding whether to certify a class for settlement purposes, a court considers the following factors to determine whether a class action is superior: (a) Class members' interests in individually controlling the prosecution or defense of separate actions; (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (c) The desirability or undesirability of concentrating the litigation of the claims in the particular forum.[4]  Some courts have found that the third Rule 23(b)(3) factor is "conceptually irrelevant in the context of a settlement."  See *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005).  "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747, at *19 (M.D. Fla. 1998).

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court compares a class action with alternative methods for adjudicating the parties' claims.  Lack of a viable alternative to a class action necessarily means that it satisfies the superiority requirement.  *See Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").  "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.  In *Culinary/ Bartender Trust Fund*, the Ninth Circuit held that the "case involve[d] multiple claims for relatively small sums" and that the class action clearly served as the only method that would "'permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'"  *Id.* at 1163.

The class action is superior here as it is on the only method that will allow Class Members "to pool [their individual] claims which would be uneconomical to litigate individually."  *Id.*

The factors articulated in Rule 23(b)(3)(A), (B) and (C) also favor class certification.  It is difficult to believe that any Class Members have an interest in individually controlling the prosecution

---

[4] Rule 23(b)(3)(A)-(C). When a court reviews a class action settlement, it does *not* consider Rule 23(b)(3)(D), the fourth factor, regarding difficulties of managing a class action. *Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620 (in deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems").

of separate actions, given the relatively small sums involved for any one Class Member.  Any Class Member who wants to pursue a separate action can opt out of the Settlement.

Also, it is desirable to concentrate the issues in this forum.  The Settlement allows all individuals to resolve any claims against Defendants through a process that does not even require the submission of a claim form.

**B.    THE SETTLEMENTS FALL SQUARELY WITHIN THE RANGE OF REASONABLENESS AND SHOULD BE FINALLY APPROVED**

No single criterion determines whether a class action settlement meets the requirements of Rule 23(e).  The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *See, Staton*, 327 F.3d at 959.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "'an amalgam of delicate balancing, gross approximations and rough justice.'"  *Id.* at 625.  The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole."  *Staton*, 327 F.3d at 961.

As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.  *Officers for Justice*, 688 F.2d at 625.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Id*.  Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self interest."  *Staton*, 327 F.3d at 961.

There is a presumption that the negotiations were conducted in good faith.  Newberg, §11.51; *Pridd v. Edelman*, 883 F.2d 438, 447 (6th Circuit 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).  Courts do not substitute their judgment

for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990); *In re Armored Car Anti-Trust Litigation*, 472 F. Supp. 1357 (N.D. GA 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. PA 1978). The fact that settlement results from arms-length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, *5 (N.D. Cal. 1997); *See In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).

Here, the Parties reached two non-collusive settlements after contentious negotiations. The settlements were finally reached after mediation before Mark Rudy, a highly-respected mediator skilled at helping parties attempting to negotiate reasonable settlements in wage and hour class actions. Obtaining class certification and establishing liability posed significant hurdles for the class that justified the settlements. The Agreements fall well within the range of reasonable outcomes and merits approval under Rule 23(e). (Dkt. no 99-2: Setareh Decl., ¶¶ 19-20.)

### 1. The Value of the Settlements to Class Members Is Fair, Reasonable and Adequate

The Parties reached the settlements in good faith after negotiating at arm's length with a professional mediator. (ECF. No. 99-2: Setareh Decl., ¶ 16.) Settlement occurred only after discovery commenced. That discovery included Plaintiff serving written discovery which Defendants responded to including producing hundreds of pages of documents. (ECF. No. 110-1: Setareh Decl. ¶ 2). Defendants also produced contact information for around 443 putative class members. *Id.* Plaintiff Figueroa was deposed on November 5, 2018, December 1, 2020, and December 3, 2020.[5] *Id.* ¶ 4.On September 24, 2020, Plaintiff deposed Delta Galil's Rule 30(b)(6) designee Denise Armendariz. *Id.* ¶ 5. On October 8, 2020, Plaintiff deposed VF Corporation's Rule 30(b)(6) designee Mark Townsend. *Id.* ¶ 6. On December

---

[5] The depositions on December 1, 2020 and December 3, 2020 were relatively short.

3, 2020, Defendants deposed Plaintiff's expert James Toney. *Id.* ¶ 9. Defendants also deposed 8 putative class members who submitted declarations in support of Plaintiff's motion for class certification. *Id.* ¶ 10. The information produced in discovery, and the additional, detailed data about class composition produced for mediation, were sufficient to permit Plaintiff's counsel to adequately evaluate the settlements. And, notably, approval of a class action settlement does not require that discovery be exhaustive. *See, e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). The fact that settlement results from arm's length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).

With respect to the claims asserted on behalf of the settlement classes in this case, there are significant risks that support the reduced compromise amount. These risks include, but are not limited to: (i) the risk that Plaintiff would be unable to establish liability for allegedly unpaid straight time or overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39 & fn. 33 (2014) ("*Duran*"), *citing Dilts v. Penske Logistics, LLC* 2014 WL 205039 (S.D. Cal. 2014) (dismissing certified off-the-clock claims based on proof at trial); (ii) the risk that Defendants' challenged employment policies might not ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal. 4th at 14 & fn. 28 (*citing Court of Appeal decisions favorable on class certification issue without expressing opinion as to ultimate viability of proposition); (iii) the risk that uncertainties pertaining to the ultimate legality of Defendants' policies and practices could preclude class-wide awards of statutory penalties under Labor Code sections 203 and 226(e); (iv) the risk that individual differences between settlement Class Members could be construed as pertaining to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at 19; (v) the risk that any civil penalties award under the PAGA could be reduced by the Court in its discretion, see Labor Code section 2699(e)(1); (vi) the risk that class treatment could be deemed improper as to one or more claims except for settlement purposes; and (vii) the risk that lengthy appellate litigation could ensue. Defendants successfully argued in their opposition to Plaintiff's motion for class certification that: 1) a bell

system was used for most employees to alert them of the beginning of meal and rest breaks; 2) the security check policy was not universal and many checks occurred while employees were clocked in; 3) Defendants had compliant written meal and rest break policies; and 4) 45 minute meal breaks were offered for most employees. (ECF No. 74.) Defendants strongly deny any liability and the propriety of class certification for any reason other than settlement. (ECF No. 99-2: Setareh Decl., ¶ 19.) Continued litigation of this lawsuit presented Plaintiff and Defendants with substantial legal risks that were (and continue to be) very difficult to assess.

In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable recovery for the settlement Class Members. (ECF No. 99-2: Setareh Decl. ¶ 16.) The settlement amount is, of course, a compromise figure. (ECF No. 99-2: Setareh Decl. ¶ 20.) By necessity it took into account risks related to liability, damages, and all the defenses asserted by Defendants. (*Id.*) Moreover, each settlement Class Member was given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue their own claims. (*Id.*) The estimated average settlement payment per class member is $713.16 and the estimated highest payment is $1,752.98. ECF No. 110-3: Burns Decl. ¶ 11. The value of this amount reflects a fair compromise well within the range of reasonableness. Given the strong case that Defendants could bring to bear to challenge certification and liability, this is not an inconsequential sum. And, confirming the fundamental fairness of the settlements, <u>each Class Member</u> will be compensated pro rata based on the number of workweeks they worked during the class period. VFSA ¶ 16(b); DGSA ¶ 17(b).

After analyzing the claims in this matter, Plaintiff has concluded that the value of these settlements are fair, adequate and reasonable. While Plaintiff would certainly have preferred to recover more (and Defendants would have preferred to pay less), this outcome is favorable considering the risks of further litigation. (ECF No. 110-1: Setareh Decl. ¶ 14.) On that basis, it would be unwise to pass up this settlement opportunity. The result here is fully supportable as reasonable. These settlements achieve the goals of the litigation.

By obtaining reasonable value for their claims in light of the substantial risks of litigation, Plaintiff clearly achieved a fair settlement that merits approval.

## 2. The Agreed Upon Fees and Costs Are Reasonable

While a separate Motion addresses Plaintiff's requests for attorney's fees, costs, and an enhancement award, Plaintiff briefly addresses the reasonableness of the amounts below.

### a) *Plaintiff seeks reasonable fees and costs.*

The compensation sought for Plaintiff's counsel is also fair and reasonable. The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should begin with a "benchmark" percentage of the total fund. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The percentage can be adjusted upwards where the risks overcome, the benefits obtained and the work necessary to achieve those results supports such an adjustment of the benchmark. Class counsel has been issued one-third of the settlement amount in fees in a number of cases in the Northern District, including in *Garza v. Brinderson Constructors L.P.*, Northern District of California Case No. 5:15-cv-05742-EJD, Burnthorne-Martinez v. Sephora USA Inc., Northern District of California Case No. 4:16-cv-02843-YGR and *Fronda v. Staffmark Holdings, Inc.*, Northern District of California Case No. 3:15-cv-02315-MEJ.

Here, the Settlement Amount is $780,615.00. The settlement agreement with VF provides for Class Counsel to receive attorney fees up to 33.33% of the MSN and the settlement agreement with Delta Galil provides for Class Counsel to receive attorney fees up to 35% of the MSN. (VFSA ¶ 14(a)); (DGSA ¶ 14(a)). Although the settlement agreement with Delta Galil allows for attorney fees up to 35% of the MSN, Plaintiff's counsel requests attorneys fees of 33.33%, subject to Court approval. Class Counsel requests an award of attorney fees in the amount of $260,205.00, which is 33.33% of the settlement amount. Class Counsel has requested $25,000 in costs, as allowed under the settlement agreements. Plaintiff's counsel interprets the settlement agreements to mean that half of the litigation costs will be covered by the Delta Galil Settlement, and the other half of the litigation costs will be covered by the VF Settlement. Thus, Plaintiff's counsel would receive a maximum of $25,000 for litigation costs, subject to Court approval. (VFSA ¶ 14(b); DGSA ¶ 14(b).) Class Counsel's request for attorney fees of $260,205.00 and costs of $25,000 are reasonable and should be approved.

### 3.    The Enhancement Award Is Reasonable

Enhancement awards serve to reward the named plaintiff for the time and effort expended on behalf of the class, and for exposing himself or herself to the significant risks of litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).  In *Coca-Cola*, for example, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

Here, Plaintiff's counsel requests that the Court grant Plaintiff an incentive award of $10,000. The amount of the enhancement award requested for Plaintiff reasonable given the risks undertaken by Plaintiff.  Taking the risk of filing a lawsuit against an employer deserves reward, especially in light of the settlement achieved by Plaintiff.  Additionally, Plaintiff was actively involved in the litigation and settlement negotiations of this Action. Plaintiff spent considerable time speaking with his counsel, gathering documents, being deposed, participating in the litigation, providing discovery responses and initiating the case.  Plaintiff also took on the risk of facing intrusive discovery, facing a potential costs award, and the risk that being involved in litigation would be viewed unfavorably by potential employers. ECF No. 110.1-1 and 110.1-2: Setareh Decl. ¶ 33; Declaration of Francisco Figueroa ¶¶ 9-10. The requested amount is reasonable.

## VII.    CONCLUSION

Plaintiff negotiated settlements that resolve claims and recover money for 584 class members. Notice was completed.  No Class Members have chosen to object or opt out of the settlement.  This confirms that the settlement is fair and reasonable, especially given the claims and the potential defenses to them and to class certification.  Plaintiff asks the Court to grant final approval of the settlements and adopt the proposed order submitted herewith.

Respectfully submitted,

Dated:  April 18, 2024                         SETAREH LAW GROUP

                                              BY:  _/s/ Farrah Grant_____
                                                    SHAUN SETAREH
                                                    THOMAS SEGAL
                                                    FARRAH GRANT
                                                    Attorney for Plaintiff,
                                                    FRANCISCO FIGUEROA